Commonwealth *v.* Campana, Appellant.
Commonwealth *v.* Doe et al., Appellants.
Commonwealth *v.* King, Appellant.

234

Argued April 30, 1971, and October 1, 1971; reargued September 29, 1972. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

236

*David A. Binder,* with him *Martin W. Binder, Michael A. O'Pake, Laurence F. Ward,* and *Marx, Ruth, Binder & Stallone,* for John E. Hall, appellant.

*Emmanuel H. Dimitriou,* with him *Lieberman & Dimitriou,* for Roger Smith, Charles Ginder, Leroy Stoltzfus, Jr., Charles Dorman, and Robert A. Marcinkowski, appellants.

*Ambrose R. Campana,* with him *Campana & Campana,* for Peter Campana, appellant.

*Sallie Ann Radick,* Assistant Public Defender, with her *John J. Dean,* Assistant Public Defender, and *George H. Ross,* Public Defender, for Robert Earl King, appellant.

*Grant E. Wesner,* Deputy District Attorney, with him *Robert L. VanHoove,* District Attorney; *C. A. Barlett,* Assistant District Attorney, with him *Allen E. Eriel,* District Attorney; *Robert L. Eberhardt,* Assistant District Attorney, with him *Carol Mary Los,* Assistant District Attorney, and *Robert W. Duggan,* District Attorney, for Commonwealth, appellee.

238

OPINION BY MR. JUSTICE ROBERTS, May 4, 1973:

These three appeals were argued together during the September 1972, Term, and will be disposed of in this opinion.

On September 7, 1968, a justice of the peace found appellant Peter T. Campana not guilty of disorderly conduct, a charge arising out of an August 17, 1968, incident. Additional charges arising from the same incident of resisting arrest and assault on a police officer were dismissed for lack of sufficient evidence. Subsequently the Commonwealth again instituted the charges of resisting arrest and assault on a police officer before *another* justice of the peace who bound appellant over to the grand jury. On February 5, 1969, appellant was tried by jury and convicted of both crimes. Post-trial motions were denied and appellant was placed on probation for a period of one year. The Superior Court affirmed in a per curiam order, with Judge HOFFMAN noting a dissent. *Commonwealth v. Campana*, 217 Pa. Superior Ct. 818, 270 A. 2d 231 (1970). We granted allocatur and heard argument during the January 1972, Term. Subsequently we ordered reargument during the September 1972, Term.

Appellants John Doe, et al., were convicted by a justice of the peace on June 10, 1968, of disorderly conduct and disturbing the peace for their conduct in a Berks County bar on May 19, 1968. Each appellant was ordered to either pay a fine of $300.00 or undergo imprisonment for thirty days. The justice of the peace also bound appellants over to the grand jury on charges of aggravated assault and battery, riot, riotous destruction of property and malicious mischief, all charges originating from the May 19, 1968, disturbance. On June 10, 1969, appellants[1] were tried by jury and

---

[1] Appellants John Doe and Gerald Freese were fugitives at the time of the second criminal prosecution and were not tried. Although their names appear in the caption on the briefs, we do not pass upon the merits of their contentions.

convicted of riot, riotous destruction of property and malicious mischief. In addition appellants John Hall and Charles Ginder were found guilty of assault and battery. Motions for a new trial and in arrest of judgment were argued. The motion in arrest of judgment was granted only as to the malicious mischief charge. Each appellant was sentenced to serve a term of imprisonment of not less than one and one-half nor more than five years. The Superior Court affirmed per curiam with Judge HOFFMAN filing a dissenting opinion in which Judge SPAULDING joined. *Commonwealth v. John Doe*, 217 Pa. Superior Ct. 148, 269 A. 2d 138 (1970). We granted allocatur and, after first hearing argument during the January 1972, Term, ordered reargument during the September 1972, Term.

On February 28, 1969, appellant Robert Earl King was ordered to pay a fine of $500.00 by a justice of the peace for disorderly conduct that occurred the same day. The justice of the peace also bound appellant over to the grand jury on charges of assault and battery on a police officer in execution of a legal process and resisting arrest, both charges stemming from the February 28, 1969, incident. On September 11, 1969, appellant in a nonjury trial was convicted of both charges, and a sentence of not less than six months nor more than one year was imposed. No post-trial motions were filed but on March 8, 1971, appellant was allowed to file post-trial motions as if timely filed. After their denial the Superior Court affirmed with a per curiam order. *Commonwealth v. King*, 220 Pa. Superior Ct. 771, 286 A. 2d 416 (1972). We granted allocatur and ordered the appeal heard at the time of reargument of the above cases.

Presented for consideration in these consolidated appeals is whether appellants, by virtue of their second prosecutions, were subjected to "Double Jeopardy" in contravention of the Fifth and Fourteenth Amendments

of the United States Constitution.[2]  We hold that *all* charges resulting from the criminal "episode"[3] of each appellant should have been consolidated at one trial, and consequently the second prosecutions violated the Double Jeopardy Clause of the Fifth Amendment. Accordingly we reverse the judgments of sentences imposed as a result of the second prosecutions.[4]

---

[2] In *Benton v. Maryland*, 395 U.S. 784, 794, 89 S. Ct. 2056, 2062 (1969), the United States Supreme Court held that "the double jeopardy prohibition of the Fifth Amendment . . . app[lies] to the States through the Fourteenth Amendment." *Benton* is retroactive and thus applicable to all these appeals. See *Price v. Georgia*, 398 U.S. 323, 330 n.9, 90 S. Ct. 1757, 1762 n.9 (1970) ; *Commonwealth v. Richbourg*, 442 Pa. 147, 153, 275 A. 2d 345, 348 (1971).

Appellants John Doe, et al., had their two trials before the Supreme Court decided *Benton*. Therefore the fact that appellants did not raise the issue of double jeopardy until their appeal to the Superior Court does not bar them from relief. See *Commonwealth v. Stevens*, 429 Pa. 593, 599-600, 240 A. 2d 536, 540 (1968) ; see also *Commonwealth v. Cheeks*, 429 Pa. 89, 239 A. 2d 793 (1968).

Appellant King, although tried after the decision in *Benton*, did not raise the issue of double jeopardy either at trial or during post-trial motions. The record discloses, however, that appellant in his pro se Post Conviction Hearing Act petition raised the issue of double jeopardy. As a result of that petition, counsel was appointed and appellant was allowed to file post-trial motions as if timely filed. Under these circumstances, we cannot conclude that appellant has forfeited his right to litigate this issue. See *Commonwealth v. Cheeks*, supra, cf. *Commonwealth v. McGrogan*, 449 Pa. 584, 297 A. 2d 456 (1972). See also *Anders v. California*, 386 U.S. 738, 87 S. Ct. 1396 (1967) ; *Commonwealth v. Baker*, 429 Pa. 209, 239 A. 2d 201 (1968).

[3] See text following note 32, infra.

[4] In light of our disposition we do not reach appellant Campana's contention that before he could be convicted of resisting arrest the Commonwealth must establish that the arrest was "lawful."

Likewise we do not reach appellants John Doe, et al.'s contentions that (1) there was insufficient evidence to prove that appellant John E. Hall participated in the alleged riot or assault and battery ; (2) the representation of all appellants by the same counsel created a conflict of interest; (3) the trial court did not comply with Pa. R. Crim. P. 1106 in the jury selection.

The Double Jeopardy Clause reads in deceptively simple terms: "[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb; . . ." Although the language of the clause remains cryptic, leading authorities generally turn to Justice Black's opinion in *Green v. United States,* 355 U.S. 184, 187, 78 S. Ct. 221, 223 (1957), as an impassioned yet reasoned statement of the policies underlying the Double Jeopardy Clause: "[T]he State with all its resources and power should not be allowed to make *repeated* attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity. . . ." (Emphasis supplied.)

While courts and commentators remain undecided whether the clause governs the question of how many separate criminal offenses a defendant can be punished for at a *single* trial,[5] authorities are unanimous that the principal purpose of the Double Jeopardy Clause is to prevent "repeated attempts to convict an individual of an alleged offense" through a series of prose-

---

Appellant King has also appealed his judgment of sentence at No. 325, October Sessions, 1968, imposed for aggravated assault and battery, a charge arising from an *entirely separate* occurrence. We find sufficient evidence to support the conviction and affirm.

[5] Our discussion today deals only with the issue of *successive* prosecutions. We do not intimate a view on whether, at one trial, appellants could have been convicted of both the summary offenses and the indictable offenses. As a commentator in the Stanford Law Review has observed: "Because of the different policies underlying the two protections, the question of permitting double prosecution should be considered independently from the issue of punishment." Note, The Protection Against Multiple Trials, 11 Stan. L.R. 735, 740 (1958-59). See *Ashe v. Swenson,* 397 U.S. 436, 460 n.14, 90 S. Ct. 1189, 1202 n.14 (1970); see generally, Kirchheimer, The Act, The Offense and Double Jeopardy, 58 Yale L.J. 513, 526 n.59 (1949) (cases discussed); *Gore v. United States,* 357 U.S. 386, 395, 78 S. Ct. 1280, 1285 (1958) (DOUGLAS, J., dissenting); Fisher, Double

cutions.[6]  As Mr. Chief Justice BURGER has noted: " 'The prohibition is not against being twice punished, but against being twice *put* in jeopardy . . . .' The 'twice put in jeopardy' language of the Constitution thus relates to a potential, i.e., the risk that an accused for a second time will be convicted of the 'same offense' for which he was initially tried." *Price v. Georgia*, 398 U.S. 323, 326, 90 S. Ct. 1757, 1759 (1970).

At its inception in early common law the defense of double jeopardy was remarkably equipped to prevent successive prosecutions.[7]  Criminal statutes were relatively few in number and broad in coverage. An acquittal at one trial could not generally be followed by another prosecution, because the second trial would by necessity be based on precisely the same charge as that of the first. A conviction resulted in a severe sentence, generally death, leaving little incentive for the prosecution to seek another trial.

As countless legal scholars have noted, however, the modern age of criminal procedure has witnessed a proliferation of penal statutes.[8]  A consequence of this de-

---

Jeopardy: Six Common Boners Summarized, 15 U.C.L.A. L.R. 81, 86 (1967) ; Horack, The Multiple Consequences of a Single Criminal Act, 21 Minn. L.R. 805, 806 (1936-37) ; Note, 11 Stan. L.R. at 736-38 ; Note, Twice in Jeopardy, 75 Yale L.J. 262, 269 (1965) ; Note, Consecutive Sentences in Single Prosecutions: Judicial Multiplication of Statutory Penalties, 67 Yale L.J. 916, 918-19 (1957-58) ; Note, Statutory Implementation of Double Jeopardy Clauses: New Life for a Moribund Constitutional Guarantee, 65 Yale L.J. 339, 339-40 (1956).

[6] See note 5, supra ; see also *Abbate v. United States*, 359 U.S. 187, 198-200, 79 S. Ct. 666, 672-74 (1959) (BRENNAN, J., separate opinion) ; *Commonwealth v. Mills*, 447 Pa. 163, 171-72, 286 A. 2d 638, 641 (1971).

[7] For history of the concept of double jeopardy, see Kirk, "Jeopardy" During the Period of the Year Books, 82 U. Pa. L.R. 602 (1934) ; Note, 65 Yale L.J. at 339-344.

[8] *Ashe v. Swenson*, 397 U.S. 436, 445 n.10, 452, 90 S. Ct. 1189, 1195, 1198 (1970) ; Bossert, Double Jeopardy—Municipal Prosecutions as a Bar to Subsequent State Prosecutions for Offenses Aris-

velopment is the judiciary's responsibility "to recognize that new rules must be devised to cope with the fact that a single factual situation may today give rise to a number of substantive offenses."[9]  Prosecutors, "by consulting a Thesaurus,"[10] are presently able to dissect a single criminal "act", "transaction", "occurrence", "episode" or "circumstance", and produce a variety of criminal charges.  Unless the judiciary properly meets its responsibility, a prosecutor, if he is for any reason dissatisfied with the result of the first trial, could circumvent the generally accepted prohibition against state appeals[11] with a new set of charges for a second prosecution.  Such "trial run" prosecutions are, in Mr. Justice STEWART'S words, "precisely what the constitutional guarantee forbids."[12]

The Pennsylvania Double Jeopardy Clause, differing only stylistically from that contained in the Fifth Amendment,[13] has been thought to be limited only to what were heretofore "capital" offenses.[14]  Neverthe-

---

ing From the Same Criminal Actions, 76 Dick. L.R. 282, 287 (1972) ; Chilingirian, Double Jeopardy: Vandercomb to Chicos—Two Centuries of Judicial Failure in Search of a Standard, 45 J. of Urban L. 405, 456 (1967) ; Lugar, Criminal Law, Double Jeopardy and Res Judicata, 39 Iowa L.R. 317 (1953-54) ; Mayers and Yarbrough, Bis Vexari: New Trials and Successive Prosecutions, 74 Harv. L.R. 1, 14 (1960).

[9] Note, 65 Yale L.J. at 344.

[10] Lugar, 39 Iowa L.R. at 317.

[11] Kepner v. United States, 195 U.S. 100, 24 S. Ct. 797 (1904) ; accord Price v. Georgia, 398 U.S. 323, 327, 90 S. Ct. 1757, 1760 (1970) ; Commonwealth v. Ray, 448 Pa. 307, 311, 292 A. 2d 410, 413 (1972), and cases cited therein.

[12] Ashe v. Swenson, 397 U.S. at 447, 90 S. Ct. at 1196.

[13] Art. I, §10 of the Pennsylvania Constitution reads in pertinent part: "No person shall, for the same offense, be twice put in jeopardy of life or limb; . . ."

[14] This strict and unique interpretation was apparently the result of a literal reading of the phrase "life or limb." See McCreary v. Commonwealth, 29 Pa. 323, 325-27 (1857) ; see also Commonwealth v. Baker, 413 Pa. 105, 109-112, 196 A. 2d 382, 384-86 (1964), and cases discussed therein.

less, defendants in this Commonwealth have been afforded a measure of protection against successive prosecutions by common law pleas of autrefois acquit and autrefois convict. These pleas prevent a prosecutor, after a conviction or acquittal of a "constituent" or lesser included offense in the first trial, for initiating a second prosecution for a greater offense.[15]

Similarly we have construed our Double Jeopardy Clause to protect a defendant upon retrial in a murder prosecution from conviction in the second trial of a greater offense than that of the first,[16] or greater punisment.[17] In *Dinkey v. Commonwealth*, 17 Pa. 126 (1851), this Court applied collateral estoppel to prevent a second prosecution where an issue necessary to sustain the charge was resolved in defendant's favor at the first trial.[18] In *Commonwealth v. Lloyd*, 141 Pa. 28, 30, 21 Atl. 411 (1891), we unanimously prohibited a second prosecution because the state could have joined both counts at the first trial: "[W]e do not think the commonwealth can prosecute for the one offence in one county, and for the other in a different county. In

---

Pennsylvania is apparently the only state where the double jeopardy clause has been previously limited to capital offenses. See Hall, Kamisar, LaFave, Israel, Modern Criminal Procedure (1969) at 1213; Notes, Double Jeopardy; The Reprosecution Problem, 77 Harv. L.R. 1272, 1287 (1964). However, after *Furman v. Georgia*, 408 U.S. 238, 92 S. Ct. 2726 (1972), and *Commonwealth v. Bradley*, 449 Pa. 19, 295 A. 2d 842 (1972), Pennsylvania's Double Jeopardy Clause is now subject to further interpretation. See also *Commonwealth v. Caye*, 447 Pa. 213, 290 A. 2d 244 (1972).

[15] *Commonwealth ex rel. Papy v. Maroney*, 417 Pa. 368, 370-71, 207 A. 2d 814, 815-16 (1965) ; see also Act of March 31, 1860, P. L. 427, §§30, 51, 19 P.S. §§464, 831.

[16] *Commonwealth ex rel. Light v. Cavell*, 422 Pa. 215, 219, 220 A. 2d 883, 884-85 (1966), and cases cited therein.

[17] *Commonwealth v. Littlejohn*, 433 Pa. 336, 347-48, 250 A. 2d 811, 816-17 (1969).

[18] But see *Commonwealth v. Melissari*, 298 Pa. 63, 148 Atl. 45 (1929).

other words, there may be two counts, *but not two prosecutions.* The commonwealth has elected in this instance to proceed in Luzerne county, and we think is bound by such election. . . ." (Emphasis supplied.)

Many jurisdictions, including perhaps this one at times,[19] have applied a "same evidence" test to determine whether a second prosecution is for the "same offense." That test has been almost unanimously regarded as totally ineffective to implement the important double jeopardy guarantee of preventing successive prosecutions.[20] As one commentator in the Yale Law Journal aptly noted: "Attempting to choose which version of the same evidence test would best implement the double jeopardy prohibition is like deciding which of five lumber jacks would be the most handy with a violin."[21]

The United States Supreme Court has recently responded to the problem posed by successive prosecutions in two landmark cases. In *Waller v. Florida*, 397 U.S. 387, 90 S. Ct. 1184 (1970), the Court held impermissible as a violation of the Double Jeopardy Clause a second prosecution that was concededly for the "same acts" that the defendant had been punished for in a court of limited jurisdiction. More significantly,[22] Mr.

---

[19] *Commonwealth v. Shoener*, 216 Pa. 71, 77, 64 Atl. 890, 892 (1906), cert. denied, 207 U.S. 188, 28 S. Ct. 110 (1907) (Superior Court opinion), and cases cited therein.

[20] Sigler, Double Jeopardy (1969) ; Chilingirian, 45 J. of Urban L. 456; Kirchheimer, 58 Yale L.J. 513; Mayers and Yarbrough 74 Harv. L.R. 1; McInteer, Collateral Estoppel in Criminal Procedure: A Constitutional Guarantee, 39 U.M.K.C. L.R. 225 (1970-71) ; Notes, 77 Harv. L.R. 1272; Recent Developments, Constitutional Law— Double Jeopardy, 69 Mich. L.R. 762 (1971).

[21] Notes, 75 Yale L.J. at 274.

[22] *Waller* has been interpreted as only rejecting the two "sovereign" theory of municipal-state prosecutions. See *State v. Conrad*, 243 So. 2d 174 (Fla. App. 1971) ; cases discussed in Bossert, 76 Dick. L.R. at 284-85.

Justice STEWART, speaking for the Court in *Ashe v. Swenson*, 397 U.S. 436, 90 S. Ct. 1189 (1970), gave specific recognition to the "possibil[ity] [of] prosecutors . . . spin[ning] out a startingly [sic] numerous series of offenses from a single alleged criminal transaction."[23] As a partial response to that "startling" possibility, the Court held a second prosecution impermissible where an application of "collateral estoppel" revealed that an "ultimate fact" essential to the offense in the second trial had been decided in defendant's favor at the first.[24]

The protection afforded a defendant against successive or repeated prosecutions by the doctrine of collateral estoppel, however, is diminished considerably by its inherent limitations. That imprecise doctrine has proven quite difficult and burdensome for appellate courts to properly and uniformly apply.[25] Before the doctrine of collateral estoppel can apply the first trial must end in acquittal,[26] and a "rational" reading of the

[23] 397 U.S. at 445 n.10, 90 S. Ct. at 1195 n.10; see also 397 U.S. at 452, 90 S. Ct. at 1198 (BRENNAN, J., concurring).

[24] 397 U.S. at 443-44, 90 S. Ct. at 1194.

[25] See, e.g., *State v. Harris*, 78 Wash. 2d 894, 480 P. 2d 484 (1971) ; *Hay v. Texas*, 472 S.W. 2d 157 (Tex. Ct. of Crim. App. 1971) ; *Decker v. State*, 471 S.W. 2d 343 (Ark. S. Ct. 1971) ; *Christopher v. State*, 240 So. 2d 316 (Fla. Ct. of App. 1970). Many courts and commentators have concluded that *Ashe* will offer little protection from successive prosecutions. See, e.g., *Holloway v. State*, 14 Md. App. 703, 288 A. 2d 652 (1972) ; Downey, Criminal Procedure—Application of the Doctrine of Collateral Estoppel to State Criminal Prosecutions, 49 N.C. L.R. 351, 355 (1971) ; Lucker, Collateral Estoppel—An Attempted Transfusion into the Guarantee Against Double Jeopardy, 44 Temp. L.Q. 377 (1971) ; Schaefer, Unresolved Issues in the Law of Double Jeopardy: Waller and Ashe, 58 Calif. L.R. 391, 394 (1970) ; Comment, Criminal Law—Double Jeopardy—Collateral Estoppel, 48 Den. L.J. 130, 136 (1971) ; Notes, 69 Mich. L.R. at 777; Note, 65 Yale L.J. at 349; but see Morrow, Constitutional Law—Criminal Procedure—*Ashe v. Swenson*, 49 Texas L.R. 148, 155 (1970).

[26] 397 U.S. at 459 n.13, 90 S. Ct. at 1202 n.13 (BRENNAN, J., concurring). But see the suggestion in Note, 75 Yale L.J. at 288,

record must disclose that the jury based its verdict of acquittal on but *one* issue.[27] As Mr. Justice SCHAEFER of the Illinois Supreme Court has succinctly observed: "Collateral estoppel is therefore of limited value because it is not often possible to determine with precision how the judge or jury has decided any particular issue."[28]

It has been noted that the doctrine of collateral estoppel places defense counsel on the horns of a dilemma.[29] If defendant is to gain any chance of protection under the doctrine he is better off by limiting his defense at the first trial thus placing fewer facts at issue before the jury. Such a consideration might impair counsel's ability to effectively represent a defendant.

By far the most efficient and enthusiastically received[30] proposal for preventing successive prosecutions is that advanced by the American Law Institute Model Penal Code (§1.07(2)): "[A] defendant shall not be

that if the jury in a second prosecution acquitted a defendant by resolving an issue in his favor, collateral estoppel should apply to the first trial and conviction.

[27] 397 U.S. at 444, 90 S. Ct. at 1194. The proposal of special verdicts in criminal trials to determine what issues the jury actually resolved has been almost universally condemned. See, e.g., Mayers and Yarbrough, 74 Harv. L.R. at 34.

[28] Schaefer, 58 Calif. L.R. at 394.

[29] Note, 69 Mich. L.R. at 777; Cunningham, Constitutional Law—Double Jeopardy—*Ashe v. Swenson*, 39 U. Cin. L.R. 590, 595 (1970).

[30] See, e.g., Bigelow, Former Conviction and Former Acquittal, 11 Rutgers L.R. 487, 500 (1957); Chilingirian, 45 J. of Urban L. at 462, Crimmins, Criminal Law—*Ashe v. Swenson*, 44 N.D. L. 293, 296 (1970); *Kirchheimer*, 58 Yale L.J. at 534; Lugar, 39 Iowa L.R. at 347. Schaefer, 58 Calif. L.R. at 398; Comments, Collateral Estoppel in Criminal Cases, 28 U. Chi. L.R. 142, 148 (1960-61); Comments, Criminal Law and Procedure—Former Jeopardy—Tests of "Same Offense," 32 Mich. L.R. 512 (1933) (earlier A.L.I. version); Note, 11 Stan. L.R. at 753; Note, Collateral Estoppel in Criminal Cases—A Supplement to the Double Jeopardy Protection, 21 Rutgers L.R. 274, 291 (1966-67); Note, 75 Yale L.J. at 296; Note, 65 Yale L.J. at 357.

subject to *separate* trials for multiple offenses *based on the same conduct or arising from the same criminal episode, if such offenses are known* to the appropriate prosecuting officer at the time of the commencement of the first trial. . . ."[31] The commentary to §1.08 of the Model Penal Code, which bars a second prosecution "based upon the same facts" as that of the first, states that the purpose of the section is to protect defendants from: "successive prosecutions based upon essentially the same conduct, whether the purpose in so doing is to hedge against the risk of an unsympathetic jury at the first trial, to place a 'hold' upon a person after he has been sentenced to imprisonment, or simply to harass by multiplicity of trials."[32]

The ABA Project on Minimum Standards for Criminal Justice, Standards Relating to Joinder and Severance §1.3 (Approved Draft, 1968), with specific reference to the Model Penal Code, accords a defendant the right to request joinder of *all* charges if they are "based on the same conduct or arise from the same criminal episode." "Episode" is defined as " 'an occurrence or connected series of occurrences and developments which may be viewed as distinctive and apart although part of a larger or more comprehensive series.' " ABA Standards Relating to Joinder and Severance §1.3(a) (commentary). As the commentary to the ABA Standards Relating to Joinder and Severance §1.3(a) states: "It is the view of the Advisory Committee that, except where the ends of justice would otherwise be defeated, the *defendant should not be subjected to multiple trials* of related offenses. . . ." (Emphasis supplied.)

In recent months the Oregon Supreme Court, after careful analysis of the inadequacy of existing protec-

---

[31] Model Penal Code §1.07(2) (Proposed Draft, 1962) (Emphasis supplied).

[32] Model Penal Code §1.08 (Ten. Draft No. 5, 1956).

tions against successive prosecutions, held that "a second prosecution is for the 'same offense' and is prohibited if (1) the charges arise out of the same act or transaction. . . ." *State v. Brown,* 497 P. 2d 1191, 1198 (Ore. S. Ct. 1972). That court observed that the House of Lords in England, the birthplace of the concept of double jeopardy, had recently promulgated a rule of court "that the prosecution must as a general rule *join in the same indictment charges that 'are founded on the same facts,* or form or are part of a series of offenses of the same or similar character. . . .' "[33]

The Oregon Supreme Court in *State v. Brown,* supra, further noted that New Jersey and Hawaii among several states have either adopted a "same transaction" test or have long applied one.[34] In California, Illinois, New York and Minnesota compulsory joinder of all offenses arising from a criminal transaction is accomplished by legislative enactment.[35] Compare Pa. R. Crim. P. 219(b) which provides: "Two or more offenses . . . may be charged in the same indictment if they are . . . based on the same act or transaction."[36]

[33] *Connelly v. Director of Public Prosecutions,* A.C. 1254 (1964). For discussion of *Connelly* see Schaefer, 58 Calif. L.R. at 394-98; Comment, 48 Denver L.J. at 141.

[34] See, e.g., *State v. Ahuna,* 52 Hawaii 321, 474 P. 2d 704 (1970) ; *State v. Greely,* 30 N.J. Super. 180, 103 A. 2d 639 (1954) ; *Crumley v. Atlanta,* 68 Ga. App. 69, 22 S.E. 2d 181 (1942) ; *Worley v. State,* 42 Okla. Crim. 240, 275 P. 399 (1929) ; *Jones v. State,* 19 Ala. App. 600, 99 So. 770 (1924) ; see also *People v. White,* 41 Mich. App. 370, 200 N.W. 2d 320 (1972) ; compare *Eagle v. State,* 249 So. 2d 460, 465 (Fla. Ct. App. 1971).

[35] See Calif. Penal Code 654; Ill. Rev. Stat. ch. 38, §3-3 (1963) ; N.Y. Crim. Proc. L. 40.20(2) ; 40 Minn. Stats. Anno. 609.035. For discussion of the California statute, see Kahn, Double Jeopardy. Multiple Prosecution, and Multiple Punishment: A Comparative Analysis, 50 Calif. L.R. 853 (1962) ; Johnson, Multiple Punishment and Consecutive Sentences: Reflections on the *Neal* Doctrine, 58 Calif. L.R. 357 (1970).

[36] In numerous situations our Pennsylvania Rules of Court require joinder of related claims. See, e.g., Pa. R. Crim. P. 103(b)

While the Supreme Court in *Ashe v. Swenson,* supra, had only to decide whether collateral estoppel was within the aegis of the Double Jeopardy Clause, three concurring Justices indicated that the clause requires "the prosecution . . . to join at one trial all charges against a defendant that grow out of a single criminal act, occurrence, episode, or transaction". 397 U.S. at 453-54, 90 S. Ct. at 1199 (footnote omitted). Mr. Justice BRENNAN, writing for himself and Mr. Justices DOUGLAS and MARSHALL, further stated: "This 'same transaction' test of 'same offence' not only enforces the ancient prohibition against vexatious multiple prosecutions embodied in the Double Jeopardy Clause, but responds as well to the increasingly widespread recognition that the *consolidation in one lawsuit of all issues arising out of a single transaction or occurrence best promotes justice, economy, and convenience.*"[37]

("When more than one offense is alleged to have been committed by one person arising from the same incident, the issuing authority shall accept only one complaint, and shall docket the matter as a single case.") ; Pa. R. Crim. P. 304(e) ("All grounds for the [pretrial] relief demanded shall be stated in the application and failure to state a ground shall constitute a waiver thereof.").

Rule 1020(d)(1) of the Civil Procedure Rules similarly requires the joinder of *all* causes of action: "If a transaction or occurrence . . . gives rise to causes of action in assumpsit and trespass against the same person . . . they shall be joined in an action against any such person in separate counts. . . ."

Rule 1020(d)(4) further provides: "Failure to join a cause of action as required by subdivision (d)(1) of this Rule shall be deemed a waiver of that cause of action as against all parties to the action."

[37] 397 U.S. at 454, 90 S. Ct. at 1199 (footnote omitted) (emphasis supplied). The "same transaction" test is subject to common sense exceptions. The Model Penal Code notes that all offenses must be "known to the appropriate prosecuting officer at the time of the commencement of the first trial." §1.07(2). See *Commonwealth ex rel. Papy v. Maroney,* 417 Pa. 368, 207 A. 2d 814 (1965). Both the ABA Standards Relating to Joinder and Severance §2.2 and the A.L.I. Model Penal Code §1.07(3) recommend severance if either party can demonstrate prejudice. See also 397 U.S. at 455 n.11, 90 S. Ct. at 1200 n.11 (BRENNAN, J., concurring).

The "same transaction" test is not, in Mr. Justice BRENNAN'S words, "self-defining," but experience in civil law has proved that the concept is both workable and fulfills important societal objectives.[38] By requiring that all causes of action arising from a set of operative facts be consolidated at one proceeding, the concept avoids repetitious litigation and assures finality without unduly burdening the judicial process.

Proponents of the "same transaction" test in criminal law have noted that both interests sought to be preserved by the Double Jeopardy Clause *and* important societal interests will equally and effectively be served.[39] By requiring compulsory joinder of all charges arising from a single "transaction," a defendant need only once "run the gauntlet" and confront the "awesome resources of the state." After the jury's verdict he may have the security and peace of mind that the Double Jeopardy Clause was designed to protect. As the New Jersey Supreme Court noted almost a century and a half ago: "If in civil cases, the law abhors a multiplicity of suits, it is yet more watchful in criminal cases, that the crown shall not oppress the subject, or the government the citizen, by unnecessary

Similarly, the "same transaction" test is not applicable where no single court has jurisdiction over all alleged crimes arising from a single transaction. 397 U.S. at 453 n.7, 90 S. Ct. at 1199 n.7 (BRENNAN, J., concurring).

[38] "Although analogies to the use of the phrase [same transaction] in civil litigation are not perfect since policy considerations differ, some further guidance for its application . . . can be obtained from the course of its application in civil litigation, where the courts have not encountered great difficulty in reaching sound results in particular cases. See 3 J. Moore, Federal Practice ¶13.13 (1968); 1A W. Barron and A. Holtzoff, Federal Practice and Procedure §394 (Wright ed. 1960)." 397 U.S. at 454 n.8, 90 S. Ct. at 1199 n.8 (BRENNAN, J., concurring).

[39] See n.30, supra; see also Cunningham, 39 U. Cin. L.R. at 595; Lucker, 44 Temple L.Q. at 382; McInteer, 39 U.M.K.C. L.R. at 233-34; Comments, Multiple Offenses and Multiple Penalties Under the Federal Narcotics Laws, 28 U. Chi. L.R. 308, 316 (1960-61).

prosecutions. . . . [This] is a case where the state has thought proper to prosecute the offence in its mildest form, and it is better that the residue of the offence go unpunished, than by sustaining a second indictment to sanction a practice which might be rendered an instrument of oppression to the citizen." *State v. Cooper*, 13 N.J.L. 361, 375-76 (1833).

Equally as important, the "same transaction" test protects vital societal interests. Compulsory joinder of all offenses arising from a single "transaction" avoids piecemeal litigation and thus conserves precious judicial and professional manpower as well as the time of jurors, witnesses, and the use of public resources. All outstanding charges against an accused are swiftly brought at one proceeding, and, if proven guilty, the punishment of a defendant is commensurate with *all* crimes actually committed. The "same transaction" test prevents the "trial run" and inadequately prepared prosecutions that the Court in *Ashe* found offensive to the double jeopardy provision. 397 U.S. at 447, 90 S. Ct. at 1196.

As the Oregon Supreme Court so appropriately noted in *People v. Brown,* 497 P. 2d at 1195: "The [United States Supreme Court] has not made its position clear in multiple prosecution cases." In *Ashe,* the Court established that as a constitutional *minimum* the Double Jeopardy Clause incorporated the doctrine of collateral estoppel, but did not reach the issue we confront today.

Although we are thus left without specific guidance from the Supreme Court on this particular issue, it nevertheless remains this Court's responsibility to decide an issue which, as here, is not governed by the previously announced constitutional minimum standard.[40] We hold, in light of the persuasive authority

---

[40] See, e.g., *Commonwealth v. Mills*, 447 Pa. 163, 286 A. 2d 638 (1971) ; *Commonwealth v. Ware,* 446 Pa. 52, 284 A. 2d 700 (1971) ;

discussed above, that the Double Jeopardy Clause requires a prosecutor to bring, in a single proceeding, all known charges against a defendant arising from a "single criminal episode."[41]

It should be noted that in Pennsylvania, it is clear that both summary offenses and indictable offenses may be considered at a single common pleas proceeding: "In those cases where the evidence presented to the jury on the indictable charge applies equally and is dispositive of the summary offense, it is not necessary that a separate hearing on the summary offense be held." *Commonwealth v. Dawkins*, 216 Pa. Superior Ct. 198, 201 n.3, 264 A. 2d 722, 723 n.3 (1970). See also *Commonwealth v. Ray*, 448 Pa. 307, 292 A. 2d 410 (1972) (summary offense and indictable offense consolidated at one proceeding); *Commonwealth v. Rose*, 214 Pa. Superior Ct. 50, 251 A. 2d 815 (1969), rev'd on other grounds, 437 Pa. 30, 261 A. 2d 586 (1970); *Commonwealth ex rel. Levine v. Fair*, 186 Pa. Superior Ct. 299, 144 A. 2d 395 (1958), rev'd on other grounds, 394 Pa. 262, 146 A. 2d 834 (1958); see *March v. Commonwealth*, 10 Sadler 479, 14 Atl. 375 (1888).

As this Court recognized in *Commonwealth v. Ray*, supra at 309 n.3, 292 A. 2d at 412 n.3: "Where an individual is charged with a summary and an indictable offense arising out of the same facts and is held for court on the latter charge, we are informed a magistrate in Philadelphia as a matter of practice returns all charges for disposition at trial."

---

*Commonwealth v. Whiting*, 439 Pa. 205, 266 A. 2d 738 (1970); *Commonwealth v. Singleton*, 439 Pa. 185, 266 A. 2d 753 (1970), cf. *Commonwealth v. Willman*, 434 Pa. 489, 491, 255 A. 2d 534, 535 (1969), where this Court acknowledged its power to extend *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602 (1966) beyond that required by the United States Supreme Court, but "chose not to do so."

[41] See text following note 32, supra, cf. Act of December 6, 1972, P. L.    , No. 334, §1, 18 C.P.S.A. §110 (1973) (effective June 6, 1973).

254

Although *Dawkins,* supra, and *Ray,* supra, are cases from the City of Philadelphia, it is clear beyond cavil that the jurisdiction of the Philadelphia Common Pleas Court is *precisely* the same as that of all other common pleas courts.[42]

Turning our focus to the records in each appeal, it is clear that *all* charges brought in the *two* successive prosecutions against each appellant originated from but *one* criminal episode.

The evidence adduced at the first and second prosecutions involving appellant Campana established that on August 17, 1968, a disturbance was reported to the police. Upon their arrival two policemen noticed appellant "tussling" with his friends. When appellant was asked for his identification, he pushed the officer and rammed an automobile door into the officer's stomach. During the ensuing struggle to arrest appellant the other officer was also struck. All parties concede that the events were part of a single transaction. Thus appellant, who was initially acquitted of

---

[42] The Philadelphia Common Pleas Court is given "unlimited original jurisdiction." Pennsylvania Constitution, art. V, Schedule to Judiciary Article, Section 16(o). Similarly, art. V, §5(b) of the Pennsylvania Constitution gives *all* common pleas courts "unlimited original jurisdiction." Municipal courts in Philadelphia are given jurisdiction over "All summary offenses." Art. V, Schedule to Judiciary Article, Section 16(r)(ii). Likewise justices of the peace outside of Philadelphia are given jurisdiction over offenses "punishable upon summary conviction." Act of April 26, 1929, P. L. 824, §1, 42 P.S. §391.

Finally, it is a familiar canon of construction that "[p]rovisions decreasing the jurisdiction of a court of record . . . [are to be] strictly construed." Act of May 28, 1937, P. L. 1019, art. IV, §58, 46 P.S. §558(7). There being no discernible difference between the jurisdiction of the Philadelphia Common Pleas Court and all other common pleas courts, there can be no serious doubt that *all* common pleas courts have *concurrent* jurisdiction over summary offenses. See also *Commonwealth v. Dawkins,* 216 Pa. Superior Ct. 198, 264 A. 2d 722 (1970) and the cases cited therein.

disorderly conduct, should not have had to "run the gantlet" for a second time on charges arising from the same criminal episode.

Appellants John Doe, et al., on May 19, 1968, entered a Berks County bar and initiated a "brawl." The event lasted, according to eyewitnesses, "a couple of minutes," "two or three minutes." After the incident appellants immediately fled. The Commonwealth argues, notwithstanding this testimony, that there were actually two episodes. Relying on the testimony of one witness concerning minimal property damage outside the bar, the Commonwealth contends that there was one episode in the bar and one outside. We reject that metaphysical division, because the record discloses that any damage outside the bar was done during appellants' quick flight from the brawl. Because the record establishes but a single criminal episode it is clear that *all* charges brought against appellants should have been consolidated in a single proceeding.

Appellant King on February 28, 1969, placed a phone call to the police to seek assistance. When two policemen arrived and appeared reluctant to arrest certain individuals appellant claimed were interfering with his automobile, appellant began to use abusive language directed at the police. After giving appellant several warnings, the police informed appellant that he was under arrest. During the attempt to effectuate the arrest, appellant struck one of the officers. The record disclosing only a single criminal episode, all charges brought against appellant should have been consolidated at a single proceeding.

The judgments of sentences imposed at No. 151 September Term, 1968, Lycoming County, No. 255 September Sessions, 1968, Berks County, and No. 520 April Sessions, 1969, Allegheny County, are reversed. The

judgment of sentence at No. 325 October Sessions, 1968 Allegheny County is affirmed.[43]

CONCURRING OPINION BY MR. JUSTICE EAGEN:

While I agree with the result reached by the majority, I cannot agree with the rule of law espoused to reach that result.

We are herein confronted with one question for consideration, that is: What does the constitutional phrase "same offense" mean in the context of the Double Jeopardy Clause of the Fifth Amendment, as applied to the states through the Fourteenth Amendment? This question, although deceptively simple on first impression, is truly a most difficult and troublesome question.

For an understanding of my disagreement with the majority opinion, a brief recitation of the underlying purpose of the Double Jeopardy Clause is essential. The foundation of the Double Jeopardy Clause rests on the theory that a single fair trial on a criminal offense forecloses successive prosecutions for that same offense, thus, double jeopardy is a rule of finality. Encompassed within the double jeopardy concept of finality is the fact that once an accused is given a fair trial for an offense the matter is considered closed, thereby allowing the individual to plan his life accordingly, as well as protecting him from continued distress in the form of reprosecution. Additionally, enveloped within the Double Jeopardy Clause are such basic principles as the presumption of innocence, the right to speedy justice and the courts should not be used as a tool of harassment and oppression.

---

[43] As noted in footnote 4, supra, we affirm appellant King's conviction for aggravated assault and battery at No. 325, since this charge arose from an "entirely separate occurrence" and sufficient evidence was offered to support the conviction.

I agree with the majority opinion that past efforts to give full meaning to the before-related purposes of the Double Jeopardy Clause have fallen short of that goal, but I cannot agree with its conclusion that the "same transaction" or "same episode," test, as fashioned by the majority, is the proper answer to the problem of determining if successive prosecutions constitute double jeopardy where a summary offense and a higher offense are involved. My basic disagreement with this test is its premise that all crimes which occur in the same transaction or same episode are necessarily the "same offense" in the constitutional sense. I am not persuaded this is so, particularly where a summary offense and a higher grade of crime (misdemeanor or felony) are involved. Moreover, to conclude all such crimes are the "same offense," I submit, is in effect a rewriting of the Constitution by substituting the word "episode" for the word "offense" in the Fifth Amendment. Also, such a position completely ignores the nature and purpose of the second criminal charge and focuses exclusively on the acts committed.

The weakness of the majority opinion stems from the fact that it adopts a rule of law which was fashioned to operate where two or more felonies or misdemeanors, or a combination of both are involved, to a situation where a summary offense and a felony or a misdemeanor are involved. This type of approach may be viable in that situation where only felonies and misdemeanors are involved, but it is not viable here, because it focuses strictly on the acts committed, as opposed to the "offense" as the Constitution mandates. It cannot be questioned the Commonwealth has a right and duty to protect the interests of its citizenry through statutory enactments of different kinds and grades of crimes. For example, a law making disorderly conduct a crime may be enacted to protect the citizens of the

Commonwealth from this type of disturbance and annoyance. At the same time the Legislature may enact a law applicable to acts which constitute homicide. Are these two crimes the "same offense"? Clearly, they are not. But under the rule of law adopted by the majority opinion if there were a prosecution for disorderly conduct, and a subsequent attempt to prosecute for homicide, the homicide prosecution would be barred if the homicide grew out of the same episode as the disorderly conduct. The absurdity of this is self-evident. Other examples could be cited leading to the same ludicrous result.

The approach which the majority opinion adopts leaves the Commonwealth and its citizens unprotected in many cases, and will lead in some instances to the defeat of the ends of justice by unreasonably extending the meaning of the constitutional phrase "same offense." It likewise destroys the purpose of many statutory enactments. I would propose to adopt a rule which would not only fully protect the interests of the accused, but also the interests of the people of the Commonwealth. As opposed to the position of the majority opinion, I would focus on the various offenses charged as opposed to focusing exclusively on the acts involved, for it is my belief that all offenses within one episode are not the "same offense" for double jeopardy purposes.

Initially, I would propose a joinder requirement such as the majority opinion does. Whether you choose to name this requirement the same act, same conduct, same transaction, or same episode is not important. I would require the Commonwealth to join in one trial all crimes which follow from a continuous and uninterrupted conduct, so joined in time, place and circumstances, that such conduct is directed to the accomplishment of a single criminal objective. However,

to this general rule I would add a very significant exception, that is, a second prosecution may be instituted if the purpose of the crime then charged is to prevent a substantially different harm or evil. Under such limited circumstances, I would hold the second prosecution is not for the "same offense" and, hence, does not constitute double jeopardy.

I believe such a rule with this exception is fair and completely consistent with the goals of the double jeopardy clause. This can be seen by analyzing the aforementioned goals. Probably, the most important of these is to foreclose the use of the courts as a tool of harassment and oppression. The rule herein suggested would accomplish this objective. It would also promote finality. But, and very importantly, it would protect the interests of the people of the Commonwealth in those situations where the rule advanced by the majority opinion leaves them unprotected and results in many criminals escaping justice without good reason.

Although the rule suggested may be criticized, because courts would be forced to determine if different crimes are "intended to prevent a substantially different harm or evil," I do not think this determination would be any more difficult than we make in other areas of the law or, for that matter, any more difficult than determining which crimes fall within one "episode" which the majority opinion admits is not "self-defining." The formula could not be mechanical, but rather it would consider the basic interests of society sought to be protected or vindicated by the different crimes, as well as broad objectives of our criminal law, such as prevention of future crimes, rehabilitation of the criminal, and punishment for criminal activity.

In the cases now before us, it is my view that the crimes involved in the initial prosecutions, as well as those charged in the second prosecutions, were all part

of a continuous and uninterrupted conduct and directed to the accomplishment of a single criminal objective. Since I am not convinced the crimes charged in the second prosecutions were intended to prevent a substantially different harm or evil, I would hold as the majority opinion does, that these crimes were the "same offense" in the constitutional sense, and, hence, the second prosecutions constituted double jeopardy.

Mr. Chief Justice JONES joins in this concurring opinion.

CONCURRING OPINION BY MR. JUSTICE NIX:

I agree that the offenses at issue here, with the exception of appellant King's conviction for aggravated assault and battery, should have been joined in a single trial. I do not agree with the opinion of those members of this court who would base such joinder on constitutional grounds.

A review of the historical basis of the double jeopardy clause convinces me that the suggested extension of that clause would be totally unwarranted. At the time of Blackstone, the common law principle governing two trials for the same offense was the plea of *autrefois acquit*. That plea was "grounded on this universal maxim of the common law of England, that no man is to be brought into jeopardy of his life more than once for the same offense. And hence it is allowed as a consequence, that when a man is once fairly found not guilty upon any indictment, or other prosecution, before any court having competent jurisdiction of the offence, he may plead such acquittal in bar of any subsequent accusation for the same crime." 4 Blackstone's Commentaries *335. By the time of the drafting of the state and federal constitutions in this country, the concept of double jeopardy had been expanded in two ways: (1) It applied to felony and non-felony offenses

and thus was no longer limited to jeopardy of life;[1] and (2) It could be invoked after a prior verdict of guilty as well as an acquittal. Kirk, "Jeopardy" During The Period Of The Year Books, 82 U. Pa. L. Rev. 602 (1934). Thus, the double jeopardy prohibition has two functions: (1) It denies the government an opportunity to convict a defendant of an offense after he has once been acquitted of that offense; and (2) It prohibits the government from exacting multiple punishments for the same offense. Note, Statutory Implementation Of Double Jeopardy Clauses: New Life For a Moribund Constitutional Guarantee, 65 Yale L.J. 339 (1956). While these principles are easily stated, their implementation is difficult.

Less than a year after extending the reach of the Double Jeopardy Clause to the states,[2] the United States Supreme Court held that where an issue of ultimate fact has been resolved in the defendant's favor by a valid judgment, it would constitute double jeopardy to permit the government to relitigate that fact. *Ashe v. Swenson*, 397 U.S. 436 (1970). *Ashe* dealt with the situation where a defendant is acquitted of one charge and is subsequently tried on a second charge involving the same "ultimate fact". Thus, *Ashe* is concerned with the first function of the double jeopardy clause noted above—i.e., the prohibition against allowing the government to re-litigate that which has already been resolved in the defendant's favor.

*Ashe* has not been interpreted as determining that the government may not re-litigate issues which were resolved against the defendant at a previous trial. Un-

---

[1] Pennsylvania was unique in continuing to limit the Double Jeopardy Clause to capital offenses. See Hall, Kamisar, LaFave, Israel, Modern Criminal Procedure (1969) at 1213.

[2] *Benton v. Maryland*, 395 U.S. 784 (1969).

der the facts of the *Ashe* case, if the defendant had been convicted at the first robbery trial, there is no suggestion that he could not have been subsequently tried on the remaining robbery charges.[3]  Thus, I cannot read *Ashe* or the Double Jeopardy Clause as prohibiting the government from bringing a defendant to trial on an offense after obtaining a conviction for a different offense arising from the same transaction, so long as punishment for both of the offenses would not run afoul of the second function of the double jeopardy prohibition (i.e., double punishment).  Of course, where a defendant is charged with several offenses that involve the same factual issues, the Commonwealth would be well advised to try the cases together rather than risk falling within *Ashe's* prohibition should the first trial result in an acquittal.

Even if *Ashe* could be interpreted to require joinder, such joinder would be necessary only where the two offenses have factual issues in common.  The opinion of my brother Mr. Justice ROBERTS expressly disavows the same evidence test, and would compel joinder where the offenses arise from the same criminal episode. Such a result has no basis in the policy of the Double Jeopardy Clause.

As a matter of public policy this court should adopt the joinder rule advocated by the American Law Institute Model Penal Code (§107(2)): "[A] defendant shall not be subject to separate trials for multiple offenses based on the same conduct or arising from the same criminal episode, if such offenses are known to the appropriate prosecuting officer at the time of the commencement of the first trial. . . ."  I agree that this test "protects vital societal interests" in avoiding

---

[3] A minority of the *Ashe* court, Justices BRENNAN, DOUGLAS and MARSHALL, would have adopted the same criminal episode test expressed by Mr. Justice ROBERTS.

piecemeal litigation thereby conserving "precious judicial and professional manpower as well as the time of jurors, witnesses and the use of public resources." While such a rule could appropriately be applied prospectively as suggested by my brother Mr. Justice POMEROY, it would not be inconsistent with the policy of giving litigants an incentive to raise new issues before the bar of this court to grant these appellants the benefit of the rule. See generally, *Willis v. Department of Conservation & Economic Development*, 55 N.J. 534, 264 A. 2d 34, 37-38 (1970).

I therefore concur in this court's reversal of the judgments of sentence imposed at No. 151 September Term, 1968, Lycoming County, No. 255 September Sessions, 1968, Berks County, and No. 520 April Sessions, 1969, Allegheny County.

---

DISSENTING OPINION BY MR. JUSTICE POMEROY:

I do not disagree with the philosophy expressed today by the Court that prosecutors should not have the power to force a defendant through multiple trials of offenses arising out of "the same criminal episode", even though each trial involves an admittedly separate offense. I do disagree with the method by which the majority has carried that philosophy into law.

The majority, well into its opinion, states that "[w]e are thus left without specific guidance from the Supreme Court on this particular issue . . . ." I find that statement to be incorrect, and therein lies the basis of my disagreement. There is decisional law of the Supreme Court of the United States on precisely this issue, law which that Court has on three occasions recently refused to reconsider.[1]

---

[1] It seems to me clear that today's decision has the effect of declaring unconstitutional Pennsylvania Rule of Criminal Procedure 219, a rule promulgated by this Court:

In 1958 the Supreme Court of the United States decided the companion cases of *Hoag v. New Jersey,* 356 U.S. 464, 2 L. Ed. 2d 913 (1958) and *Ciucci v. Illinois,* 356 U.S. 571, 2 L. Ed. 2d 983 (1958). *Hoag* involved several robberies committed in a raid on a tavern. *Ciucci* involved the simultaneous, multiple murder of four members of the same family. The defendant Hoag was tried on three separate occasions by the State of New Jersey for the separate robberies of three of the tavern patrons and on each trial was *acquitted.* On the trial for robbery of a fourth person, however, a conviction was finally obtained. Ciucci, on the other hand, was tried in the first two trials for murder, was *convicted* on each occasion, and received sentences of 20 years' imprisonment and 45 years' imprisonment respectively. In a third trial for the murder of yet another victim, the prosecutor obtained a conviction and the sought-for death penalty. In both cases the Supreme Court held that the Fourteenth Amendment did not embody a rule of compulsory joinder of different offenses. Mr. Justice HARLAN, speaking for the majority in *Hoag,* wrote: "We do not think that the Fourteenth Amendment always forbids States to prosecute different offenses at consecutive trials even though they arise out of the same occurrence. The question in any given case is

---

"(a) Where murder is alleged in an indictment, no other counts may be joined in the indictment except voluntary and involuntary manslaughter.

"(b) Two or more offenses, of any grade, other than murder, may be charged in the same indictment if they are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan. There shall be a separate count for each offense charged."

It well may be that this Court will now feel obliged to invalidate convictions obtained in separate trials by Commonwealth prosecutors who operated in reliance on the permissive nature of our Rule. See note on retroactivity, footnote 5 infra.

whether such a course has led to fundamental unfairness. Of course, it may very well be preferable practice for a State in circumstances such as these, normally to try the several offenses in a single prosecution, and recent studies of the American Law Institute have led to such a proposal. See Model Penal Code §1.08(2) (Tent. Draft No. 5, 1956). But it would be an entirely different matter for us to hold that the Fourteenth Amendment always prevents a State from allowing different offenses arising out of the same act or transaction to be prosecuted separately as New Jersey has done. For it has long been recognized as the very essence of our federalism that the States should have the widest latitude in the administration of their own systems of criminal justice." 356 U.S. at 467-68. In *Ciucci v. Illinois,* decided in a per curiam opinion on the same day as *Hoag,* the following appears: "The State was constitutionally entitled to prosecute these individual offenses singly at separate trials, and to utilize therein all relevant evidence, in the absence of proof establishing that such a course of action entailed fundamental unfairness. Hoag v. New Jersey . . . ." 356 U.S. at 573.

The decision in *Hoag* has been overruled to an extent by *Ashe v. Swenson,* 397 U.S. 436, 25 L. Ed. 2d 469 (1970). That case presented exactly the same factual situation as did *Hoag*[2] and the Court held that principles of collateral estoppel embedded in the Fifth Amendment barred a prosecution for an offense if a prior prosecution for a different offense had resulted in an acquittal *and* that result was necessarily premised on a finding of the non-existence of an element essential to success in the second prosecution. Mr. Jus-

---

[2] In *Ashe v. Swenson,* the defendant had allegedly robbed the several participants in a basement poker game. In *Hoag* the robbery was of the several patrons of a tavern.

tice STEWART, writing for the majority of the Court, was careful to demonstrate the narrowness of the issue: "The question is not whether Missouri could validly charge the petitioner with six separate offenses for the robbery of the six poker players. It is not whether he could have received a total of six punishments if he had been convicted in a single trial of robbing the six victims. It is simply whether, after a jury determined by its verdict that the petitioner was not one of the robbers, the State could constitutionally hale him before a new jury to litigate that question again." 397 U.S. at 446. Mr. Justice BRENNAN filed a concurring opinion in which Justices DOUGLAS and MARSHALL joined; that opinion appears to be the model for this Court's opinion in the case at bar.

The decision in *Ciucci v. Illinois*—which, unlike *Hoag*, involved not prior *acquittal* of a different offense but rather prior *conviction*—was undisturbed by the collateral estoppel rationale of *Ashe v. Swenson;* in fact, it is unmentioned in that case. *Ciucci* continues to represent the controlling federal constitutional law on the subject of successive prosecutions for separate offenses arising out of the "same criminal episode". That this is so becomes clear from the following quite recent developments:

*First*: On April 3, 1972 the Supreme Court of the United States denied a writ of certiorari in the case of *Miller v. Oregon,* 405 U.S. 1047, 31 L. Ed. 2d 590 (1972). Mr. Justice BRENNAN, in an opinion in which Justices DOUGLAS and MARSHALL joined, dissented from that denial on the basis that his view of the Double Jeopardy Clause of the Constitution, as set forth in his concurring opinion in *Ashe v. Swenson,* supra, would indicate that having tried petitioner for violation of an ordinance of the City of Portland (possession of a concealed weapon), the State of Oregon should be held

powerless to try him in a second prosecution for the crime of use of a weapon during the perpetration of a felony on the person or property of another, a different offense arising from the same criminal transaction.

*Second*: On November 13, 1972 the Supreme Court denied a petition for a writ of certiorari in *Grubb v. Oklahoma*, 409 U.S. 1017, 34 L. Ed. 2d 309 (1972). Mr. Justice BRENNAN again dissented and again was joined by Justices DOUGLAS and MARSHALL. As appears from the dissenting opinion, the State of Oklahoma had convicted the petitioner Grubb in one trial of armed robbery and in a second trial of kidnapping. Both the offenses had arisen from the "same transaction" within the meaning of Mr. Justice BRENNAN's test in his *Ashe v. Swenson* concurrence.

*Third*: In *Robinson v. Neil*, 409 U.S. 505, 35 L. Ed. 2d 29 (1973), the Supreme Court considered a double jeopardy claim made via federal habeas corpus sought by a state prisoner, a claim which is on all fours with the situation presented by the appeals at bar. The petitioner had been tried and convicted in a municipal court of violation of an ordinance of the City of Chattanooga (assault and battery) and subsequently indicted by a grand jury of assault with intent to commit murder under state law. He pleaded guilty to the state charges, but later attacked the conviction on double jeopardy grounds. The Supreme Court granted certiorari to consider the question of retroactivity of the decision in *Waller v. Florida*, 397 U.S. 387, 25 L. Ed. 2d 435 (1970), and, holding that decision fully retroactive, remanded for determination of "whether the state and municipal prosecutions were actually *for the same offense.*" 409 U.S. at 511 (emphasis added). Once more Mr. Justice BRENNAN, joined by Justices DOUGLAS and MARSHALL, dissented. This dissenting opinion took the position that Mr. Justice BRENNAN's proposed rule of constitutionally compelled joinder would require the prosecutor

"to join at one trial all the charges against a defendant that grow out of a single criminal act, occurrence, episode, or transaction." 409 U.S. at 511.

*Robinson v. Neil* can only be read as holding that successive prosecutions for *different* offenses arising from the same transaction, however defined, are constitutionally permissible, the views of the three dissenting members of the Court to the contrary notwithstanding. *Ciucci v. Illinois,* in other words, is today the existing constitutional law on the subject.[3]

Under our federal system, of course, this Court undertakes to pronounce federal law only when the highest authority in that field, the Supreme Court of the United States, has not spoken to the issue.[4] Here that is not the case; the issue which the majority has today framed and answered in the affirmative—whether the federal constitution contains a rule requiring joinder of admittedly separate offenses arising from the "same

---

[3] It should also be noted that while the Supreme Court has statutory authority to propose changes to existing rules of federal criminal procedure, it has not acted to alter the current language of Federal Rule of Criminal Procedure 8(a): " (a) *Joinder of offenses*: Two or more offenses *may* be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan." (Emphasis added). Professor Wright notes that "Rule 8(a) is permissive only," and Professor Moore remarks in 1971 that "the Advisory Committee on the Criminal Rules has apparently abandoned any intention of amending Rule 8 to provide for compulsory joinder of offenses. . . ." 1 C. A. Wright, Federal Practice and Procedure §143, at 313 (1969) and 8 J. Wm. Moore, Moore's Federal Practice para. 8.07, at 8-61 (Cum. Supp. 1971).

[4] Because the issue here has a controlling federal precedent, the cases cited by the majority in note 40 of its opinion (cases in which this Court has of necessity decided an issue of federal law in an unplowed field) are of no value.

criminal episode"—has already been answered for us in the negative. *Ciucci v. Illinois,* supra. The Court's failure to recognize this fact, in my view, bids fair to disturb in a serious manner the allocation of power as between our State courts and the United States Supreme Court.[5]

The Court does not purport to bottom its decision on any theory of Pennsylvania as distinguished from federal constitutional law. Nor could it do so without overruling our prior cases. As the opinion of the Court points out, we have heretofore construed the Double Jeopardy Clause of our own Constitution, Art. I, §10, as applicable only to "capital offenses." *Commonwealth v. Baker,* 413 Pa. 105, 196 A. 2d 382 (1964); *McCreary v. Commonwealth,* 29 Pa. 323 (1857). None of the offenses involved in the cases now before us is "capital."

Even were we to construe our Double Jeopardy Clause in such a way as to make it applicable to all offenses, I would not favor announcing a rule of compulsory joinder (such as that set forth today) as a matter of *state* constitutional law for two reasons:

---

[5] One obvious problem created by the majority's decision to dispose of these appeals on constitutional grounds is the question of retrospective application of this new rule of joinder. *Benton v. Maryland,* 395 U.S. 784, 23 L. Ed. 2d 707 (1969), which applied the Fifth Amendment to the states, was held fully retroactive in *Price v. Georgia,* 398 U.S. 323, 26 L. Ed. 2d 300 (1970). Similarly the decision in *Waller v. Florida,* 397 U.S. 387, 25 L. Ed. 2d 435 (1970), was held fully retroactive in *Robinson v. Neil,* 409 U.S. 505, 35 L. Ed. 2d 29 (1973), discussed in text supra.

If today's decision is likewise to be fully retroactive, we are likely to be confronted by a PCHA petitioner's claim that his earlier conviction for violation of the Uniform Firearms Act, for example, precluded the Commonwealth from later obtaining the conviction of first degree murder under which he is now imprisoned. Is such a prisoner to be regarded as having been afforded "a relatively painless form of immunity" by the circumstance that the state happened to prosecute the less serious offense first?

*First*: There is a vital and palpable distinction between being—(a) on the one hand twice convicted and twice punished for the "same offense" or in being convicted and punished following an earlier acquittal of the "same offense" (areas in which the Fifth Amendment traditionally operates), and (b) on the other hand, twice made to appear in court to answer to two separate charges that the State would admittedly be entitled to press in a single prosecution. To equate the two is to say that being convicted and imprisoned is an imposition of the same order as being made to attend a judicial proceeding. Clearly, however, these detriments are not of the same order, and while it is doubtless wise to have a prohibition against the former written into the Constitution as a principle of fundamental fairness shared by all civilized people, the latter is not of that fundamental dimension required for a constitutional precept.

*Second*: There is our well-founded reluctance to decide issues of constitutional law (or at least novel issues of constitutional law) when disposition can be had on some other adequate ground. As we are empowered to adopt rules of criminal procedure, it is both unnecessary and unwise for us to proceed by the more rigid and inflexible route of constitutional adjudication. We have only recently recognized that the rule-adoption route is the better alternative. *Commonwealth v. Milliken,* 450 Pa. 310, 300 A. 2d 78 (1973). Cf. *Commonwealth v. Phelps,* 450 Pa. 597, 301 A. 2d 678 (1973). I mention below briefly my preference for what such a rule should contain were we to adopt one.

The majority has made mention in its opinion of two different rules proposed by highly respected institutions—the American Bar Association Project on Minimum Standards for Criminal Justice and the American Law Institute. The ALI proposes, in brief, that joinder

should be required "for multiple offenses based on the same conduct or arising from the same criminal episode. . . ."[6] The American Bar Association Project on Minimum Standards, however, would afford the defendant the *right to request* joinder if the charges are "based on the same conduct or arise from the same criminal episode."[7]

The majority adopts the ALI proposal as constitutionally required; joinder will be the rule and severance can be obtained only if the defendant can "demonstrate prejudice."[8] Although I have no more information than does the majority on the subject of defendants' attitudes toward multiple trials, I strongly suspect that many defendants will regard a single trial of multiple offenses as having the proverbial book thrown at them. It appears possible to me that clustering into one trial all chargeable offenses arising from a single criminal episode will work to the detriment of a sizeable number of defendants in that it may discourage the assertion of other fundamental rights (such as the right to plead not guilty and to demand a jury trial). If a defendant does intend to assert these rights at least as to some of the offenses, he will doubtless regard the presence of a multitude of charges as a distinct embarrassment and will consequently move for severance.[9]

---

[6] ALI, Model Penal Code §1.07(2) (Proposed Draft 1962).

[7] ABA Project on Minimum Standards for Criminal Justice, Standards Relating to Joinder and Severance §1.3 (Approved Draft 1968).

[8] Majority Opinion, note 37.

[9] The idea that defendants may not regard today's decision as an unmitigated blessing is evidently shared by two noted commentators on criminal procedure.

Professor Wright, after noting that there exist proposals for compulsory joinder of multiple offenses arising from the same criminal transaction, concludes that "there would be serious difficulties in any such procedure . . . ." 1 C. A. Wright, Federal Practice and

Because the mere fact of joinder of multiple offenses cannot possibly be the prejudice of which the majority speaks (since the joinder is now *constitutionally* required), a hearing will be necessary to determine whether the defendant is sufficiently prejudiced by the joinder to be entitled to severance.[10]  To require yet another hearing in the tortuous process of criminal procedure is unlikely to conserve judicial resources.  I am therefore highly doubtful that the goals of the majority—"conserv[ation] of precious judicial and professional manpower as well as the time of jurors, witnesses, and the use of public resources"—will be realized.

To my mind the better (but, by today's decision, unconstitutional) approach is that of the American Bar Association Project on Minimum Standards for Crimi-

---

Procedure §143, at 313 (1969).  Professor Moore would agree: "By eliminating the opportunity for afterthought, compulsory joinder would deprive the prosecutor of the means to correct what he considers a failure of justice.  Thus put on notice that there will be no second chance, the prosecutor's probable reaction will be to multiply and magnify the possible offenses within a single indictment, thereby enhancing the likelihood of conviction, and the chance of cumulative punishment.  A realistic appraisal of the operation of the adversary system recognizes that any marked shift in the balance of advantage inevitably produces a counteraction.  *This perspective makes one approach the compulsory joinder proposal with some ambivalence.*"  8 J. Wm. Moore, Moore's Federal Practice para. 8.07[3], at 8-64 (emphasis added).

[10] ABA Project on Minimum Standards for Criminal Justice, Standards Relating to Joinder and Severance §1.3, 22 (Approved Draft 1968) (Comment) (emphasis added): "It is the judgment of the Advisory Committee that it is preferable to place this burden on the defendant [of requesting joinder], for whose protection this joinder-of-related offenses requirement is intended.  In this way the trial court will be *spared the necessity of holding a hearing* on the question of whether related offenses should be tried together or separately in those cases in which the defendant concludes that it is in his best interests not to attempt to force a joint trial of related offenses.  There may be *many occasions* when the defendant will make this judgment."

nal Justice. The ABA proposal would bar the prosecutor from pursuing a defendant in multiple prosecutions by the simple expedient of empowering the defendant to require joinder of separate offenses arising from the same criminal episode. Adoption of this device (1) would not burden judicial resources because the defendant could regulate joinder or severance without the necessity of a hearing, and (2) would cure whatever unfairness and hardship inheres in multiple prosecutions for different offenses arising from the same episode. Furthermore, if the rule proved deficient in operation, then this Court would be at liberty to alter it as it might see fit.

Adoption of a rule of criminal procedure granting a defendant the right to request joinder, however, would be of no benefit to appellants in the cases at bar. It would be necessary therefore to decide the instant appeals by reaching the question which appellants actually argued before this Court: whether they had been twice prosecuted *for the same offense* in violation of the Fifth and Fourteenth Amendments of the Constitution. Resolution of that question is beyond the scope of this dissenting opinion; the general approach is sketched in the margin.[11]

---

[11] The fact that appellants' first convictions were before a justice of the peace does not affect the operation of the Double Jeopardy Clause of the Fifth Amendment. *Waller v. Florida*, 397 U.S. 387, 25 L. Ed. 2d 435 (1970). It is therefore open to appellants to argue, as they have, that the second prosecution in the court of common pleas is barred because it was for the "same offense" within the meaning of the Fifth Amendment. What is the test for determining when one offense is the "same offense" as another?

The federal courts have developed what is generally referred to as the "same evidence" test to determine whether two offenses are the same for double jeopardy analysis. *Gore v. United States*, 357 U.S. 386, 2 L. Ed. 2d 1405 (1958) ; *Blockburger v. United States*, 284 U.S. 299, 76 L. Ed. 306 (1932) ; *United States v. Brisbane*, 239 F. 2d 859 (3d Cir. 1956).

I note, finally, that the excursion into constitutional law which the Court now undertakes will predate the effectiveness of this state's new Crimes Code, Act of December 6, 1972, P. L. 1482, 18 P.S. §101 et seq., by only two months. That Code (effective June 6, 1973) contains provisions on compulsory joinder[12]

---

In Pennsylvania we have developed a doctrine of "merger" whereby we determine whether one offense necessarily involves another, as, for example, rape involves fornication, and robbery involves both assault and larceny. *Commonwealth ex rel. Moszczynski v. Ashe*, 343 Pa. 102, 104, 21 A. 2d 920 (1941); *Commonwealth v. McCusker*, 363 Pa. 450, 70 A. 2d 273 (1950); *Commonwealth v. Comber*, 374 Pa. 570, 97 A. 2d 343 (1953). If one offense is found to have "merged" with another, then prosecution or conviction for the second offense is barred.

This Court has not had occasion to consider the question whether, following application of the Fifth Amendment's Double Jeopardy Clause to the states in *Benton v. Maryland*, 395 U.S. 784, 23 L. Ed. 2d 707 (1969), our "merger" decisions might satisfy the requirements of federal double jeopardy law. Our merger test, however, focuses on the conduct of the defendant rather than on evidentiary considerations and as such is generally thought more lenient to defendants than the "same evidence" tests. See Note, Twice in Jeopardy, 75 Yale L.J. 262, 275 (1965).

Were the Court to decide these appeals on the question actually presented—whether the second prosecution was for the "same offense", then I think it would be a matter of applying our merger test.

[12] Section 110 of the Crimes Code provides (emphasis added):

"*When Prosecution Barred by Former Prosecution for Different Offense*

"Although a prosecution is for a violation of a different provision of the statutes than a former prosecution or is based on different facts, it is barred by such former prosecution under the following circumstances:

"(1) The former prosecution resulted in an acquittal or in a conviction as defined in section 109 of this title (relating to when prosecution barred by former prosecution for same offense) and the subsequent prosecution is for:

"(ii) *any offense based on the same conduct or arising from the same criminal episode*, if such offense was known to the appropriate prosecuting officer at the time of the commencement of the

which would accomplish as a matter of state statutory law what the Court here does (erroneously and unecessarily, as I think) by interpretation of the federal constitution.

In sum, the Court's holding that the federal constitution compels joinder in one trial of different offenses arising out of the same criminal episode is not only incorrect, but is also unwise as a matter of constitutional law in general, and is unresponsive to any argument made to this Court by the parties. Beyond this, it preempts an area which could be better handled by adopting a rule of criminal procedure, or, in light of the Crimes Code provision cited supra, by leaving the matter to the Legislature. It is for these reasons that I dissent.

---

first trial and was within the jurisdiction of a single court unless the court ordered a separate trial of the charge of such offense; . . ."