**Commonwealth v. Doe**

*G. Roger Markley, Assistant District Attorney,* for Commonwealth.

*Edward C. Connolly,* of *Connolly, McAndrews, Kihm & Stevens,* for defendant.

GARB, *J.*, August 13, 1974—The juvenile herein appears before us by virtue of a petition filed in the Juvenile Court under and pursuant to the Juvenile Act of December 6, 1972, P.L. 1054 (No. 333), sec. 1, 11 PS §§50-101, et seq., alleging that he committed an act of delinquency based upon the commission by him, allegedly, of certain acts which would constitute the crime of involuntary manslaughter. He moves to dismiss the petition based upon an alleged prosecution instituted before a district justice of the peace charging him with the summary offense of reckless driving arising out of the same occurrence. As a result of a citation issued charging the juvenile with reckless driving, he appeared for a hearing before the district justice but the matter was continued for the failure of any prosecution witnesses to appear. At a second hearing, the prosecution witnesses again failed to appear and the district justice dismissed the petition before him without hearing any evidence on the grounds of a failure of prosecution.

The juvenile contends that the proceedings in Juvenile Court now before us are barred on two theories, the first of which is the theory of former or double jeopardy. The doctrine of former or double jeopardy as enunciated in the Fifth Amendment to the United States Constitution is now applicable to State prosecutions by virtue of the inter-action of

the Fourteenth Amendment of the United States Constitution. See Benton v. Maryland, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed. 2d 707 (1969); North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed. 2d 656 (1969); Waller v. Florida, 397 U.S. 387, 90 S.Ct. 1184, 25 L.Ed. 2d 435 (1970); Ashe v. Swenson, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed. 2d 469 (1970), and Commonwealth v. DeVaughn, 221 Pa. Superior Ct. 410 (1972).[1]

The constitutional prohibition against double or former jeopardy was designed to protect an individual from being subjected to the hazards of trial and possible conviction more than once for an alleged offense. A verdict of acquittal is final, ending a defendant's jeopardy, and even when not followed by any judgment is a bar to a subsequent prosecution for the same offense. However, it is not essential that a verdict of guilt or innocence be returned to place a defendant in jeopardy so as to bar a second trial on the same charge. Defendant is placed in jeopardy once he is put to trial before a jury so that if a jury is discharged without his consent, he cannot be tried again: Green v. United States, 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed. 2d 199 (1957). A defendant is placed in jeopardy in a criminal proceeding once he is put to trial before the trier of facts, regardless of whether the trier be a jury or a judge: United States v. Jorn, 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed. 2d 543 (1971). We do not decide herein whether the double jeopardy provisions of the Federal and State Constitutions are applicable to juvenile proceedings, a question undecided in this Commonwealth, because we are satisfied that,

---

1. A similar proscription against prosecution in violation of double or former jeopardy is contained in Art. I, sec. 10 of the Pennsylvania Constitution.

under the foregoing standards, jeopardy did not attach in the proceedings before the district justice of the peace.[2]

We do not believe that the dismissal of the citation by the district justice constituted an acquittal of the juvenile of the charges before the court. The dismissal of the citation by the district justice under the circumstances herein does not necessarily constitute an acquittal of the charges where no witnesses testified or were even called by the prosecution: Commonwealth v. Bergen, 134 Pa. Superior Ct. 62 (1939).[3] We recognize that under the doctrine of Green v. United States, supra, a verdict of acquittal is not necessary to give rise to the doctrine of double jeopardy if the defendant is placed in jeopardy by virtue of his having been put to trial before an appropriate tribunal. However, it has been held in Pennsylvania that in a trial without a

---

2. In Fain v. Duff, 364 F. Supp. 1192 (M.D. Fla., 1973), affirmed 488 F. 2d 218 (5th cir., 1973), and In re Anderson, 315 A. 2d 540 (Maryland, 1974), it was decided by those courts that the doctrine of double jeopardy as enunciated in the Fifth Amendment to the United States Constitution did apply to juvenile proceedings in the State of Florida in the former and Maryland in the latter. See also State ex rel. Kelley v. Rawlins, 289 So. 2d 444 (1974) and State v. Jackson, 503 S.W. 2d 185 (1973).

3. This was a case surprisingly similar to the one at bar. It involved an adult rather than a juvenile, but the defendant was indicted for involuntary manslaughter and charged with the summary offense of reckless driving before the magistrate. The magistrate began to hear evidence on the summary offense and before the termination of the Commonwealth's evidence dismissed the charges before him. The Superior Court held that the dismissal under the circumstances of that case did not constitute a verdict of guilt or acquittal and, therefore, held that the dismissal did not constitute a bar to the subsequent prosecution for involuntary manslaughter.

jury, and we can see no reason for not equating a trial before a district justice without a jury to one before a judge of a court of record without a jury, jeopardy attaches when the accused has been subjected to a charge and the court has begun to hear the evidence. See Commonwealth v. Culpepper, 221 Pa. Superior Ct. 472 (1972), and Commonwealth v. Kelly, 48 D. & C. 2d 420 (1969). Clearly, the court did not begin to hear any evidence as, in fact, no witnesses appeared on behalf of the Commonwealth in the court of the district justice. Although the charge had been filed before the district justice, essentially nothing happened thereafter and we conclude that jeopardy did not, therefore, attach.

Under the provisions of the Crimes Code, Act of December 6, 1972, P.L. 1068, (No. 334) sec. 1, 18 Pa.C.S. §§101, et seq., it is provided in section 110 that a prosecution is barred by a former prosecution for a different offense when the former prosecution resulted in an acquittal or in a conviction or where the former prosecution was terminated after an indictment was found, by an acquittal or by a final order or judgment for the defendant which was not set aside, reversed or vacated and which acquittal, former order or judgment necessarily required a determination inconsistent with a fact which must be established for conviction of the second offense. As indicated, we are satisfied that the former prosecution did not result in an acquittal or a conviction nor was the former prosecution terminated by an acquittal or by a final order or judgment for the defendant which has not been set aside, reversed or vacated. Furthermore, under section 110 of the Crimes Code, it is provided that the subsequent prosecution is barred where the former prosecution

was improperly terminated as that term is defined in section 109. Section 109 provides that the former prosecution is improperly terminated only after the first witness was sworn and before a verdict. Here, as previously indicated, the first witness was not sworn and, therefore, this section would not constitute a bar. We believe that these provisions of the Crimes Code are essentially in conformity with the standards of double jeopardy as enunciated by the United States Supreme Court in the foregoing cases and the definition of an improper termination as set forth in section 109 is consistent with our finding herein on the question of whether jeopardy had attached in the court of the district justice of the peace.

It is not unusual for a prosecution to be aborted prior to the attachment of jeopardy with the right preserved in the Commonwealth to reinstitute the prosecutorial proceedings against the defendant for the same charge of crime. The Commonwealth is free to proceed with prosecution on the same charges, even after a nol pros. has been entered, assuming that there is no bar by the statute of limitations. See Commonwealth v McLaughlin, 293 Pa. 218 (1928) and Commonwealth ex rel. Cuniff v. Cavell, 185 Pa. Superior Ct. 128 (1958).

The juvenile contends, secondly, that this proceeding is barred by virtue of the holding of Commonwealth v. Campana, 452 Pa. 233 (1973).[4]

---

4. We likewise do not decide herein whether the doctrine of Commonwealth v. Campana, supra, is applicable to Juvenile Court proceedings. We observe in passing, however, that under the Juvenile Act, an act of delinquency cognizable by the Juvenile Court is defined inter alia as an act designated a crime under the law of this State, or of another State if the act occurred in that State, or under Federal law, or under local

Commonwealth v. Campana, supra, held essentially that where more than one prosecution arises out of the same occurrence, activity or adventure, denominated in that opinion as the "same transaction," all prosecutions should be heard and determined in the same tribunal even though some may be indictable and some summary offenses. As indicated, under those circumstances, it was held that the court of record may hear and determine all of the matters with which defendant is charged although they may all not, necessarily, be submitted to the jury. In so holding, the Supreme Court relied in great measure upon Benton v. Maryland, supra; Green v. United States, supra; Ashe v.

---

ordinances. See section 102. Under the same act it is provided that a delinquent act does not include a summary offense for which jurisdiction is vested in the district justice of the peace. In Commonwealth v. Campana, supra, it is provided that where summary offenses and indictable ones arise out of the same occurrence, both shall be considered at a single common pleas proceeding. However, in view of the mutual exclusivity of the Juvenile Court and that of the district justice regarding delinquent acts and summary offenses, we would question whether the Supreme Court can mandate that the Juvenile Court can hear and determine summary offenses in view of article V, sec. 10, of the Constitution which provides for the general supervisory and administrative authority of the Supreme Court. Therein it is provided that the Supreme Court shall have the power to prescribe general rules governing practice, procedure and the conduct of all courts, justices of the peace and all officers serving process or enforcing orders, including the power to provide assignment and re-assignment of classes of actions or classes of appeals among the several courts as the needs of justice shall require, "if such rules are consistent with this Constitution and neither abridge, enlarge nor modify the substantive rights of any litigant, *nor affect the right of the General Assembly to determine the jurisdiction of any court or justice of the peace, nor suspend nor alter any statute of limitation or repose.*" (emphasis supplied).

Swenson, supra, and Waller v. Florida, supra. The court points out that by requiring compulsory joinder of all charges arising from a single transaction, a defendant need only once "run the gauntlet" and confront "the awful resources of the state." This is the language of Green v. United States, supra, and United States v. Jorn, supra, and clearly we think, bespeaks double jeopardy standards. The court in Commonwealth v. Campana, supra, likewise observes that compulsory joinder of all offenses arising from a single transaction avoids piecemeal litigation, thus conserving judicial and professional manpower as well as the time of the jurors, witnesses and the use of public resources. All outstanding charges against an accused are swiftly brought at one proceeding and, if proven guilty, the punishment of a defendant is commensurate with all crimes actually committed. The same transaction test prevents the "trial run" and inadequately prepared prosecutions that the court in Ashe v. Swenson, supra, found offensive to the double jeopardy provision.

Subsequent to the decision in Commonwealth v. Campana, supra, a petition for a writ of certiorari was submitted to the United States Supreme Court. On October 9, 1973, the Supreme Court granted the petition, vacated the Pennsylvania Supreme Court's judgments and remanded the case to the Pennsylvania Supreme Court to consider whether the judgments were based on Federal or State grounds. See Pennsylvania v. Campana, 414 U.S. 808 94 S.Ct. 73, 38 L.Ed. 2d 44 (1973). Subsequent thereto, the Pennsylvania Supreme Court handed down a per curiam addendum opinion reaffirming the holding of Commonwealth v. Campana, supra, but declaring that the holding was based upon the

court's supervisory powers over State criminal proceedings rather than upon Federal double jeopardy standards. See Commonwealth v. Campana, 455 Pa. 622 (1974). Although it is now clear that the compulsory joinder mandate is one which comes to us by virtue of the Supreme Court's supervisory and administrative authority under Art. V, sec. 10, of the Pennsylvania Constitution, by virtue of the juxtaposition of the first with the second Campana opinions, we must conclude that the standards as enunciated in the first Campana opinion are those which trigger the effectuation of the doctrine therein espoused. Therefore, we are satisfied that in order to determine whether a defendant's subsequent prosecution is barred by a former prosecution under the doctrine of Campana, we must look to see whether both prosecutions arise from the same transaction, which is conceded herein, and whether there was some event in the alleged former prosecution of legal significance. Our determination in this regard is the same as the conclusion we reached with regard to the question of double or former jeopardy. We are satisfied that nothing occurred in the office of the district justice of the peace which would bar the juvenile proceedings now before us. He neither made a finding of guilt or innocence nor did he decide any facts which would give rise to any kind of a collateral estoppel. He decided nothing, because he heard nothing. He merely discharged the proceedings because of failure of the Commonwealth to present any evidence whatsoever. From the juvenile's point of view, his position is no different than would it have been had the Commonwealth merely withdrawn the proceedings or had the district justice forwarded the transcript for determination by the

Court of Common Pleas under the mandate of Commonwealth v. Campana, supra. The only thing that happened was that the charges were actually filed in the office of the district justice of the peace which factor, standing alone, would not bar a subsequent prosecution for an indictable offense under Commonwealth v. Campana. Therefore, we are satisfied that Commonwealth v. Campana, supra, even if applicable to juvenile proceedings, would not be a bar to these proceedings in Juvenile Court. Accordingly, we hereby enter the following

## ORDER

And now, August 13, 1974, the juvenile's petition to dismiss the petition against him in juvenile court is hereby denied, dismissed and overruled.

## CONCURRING OPINION

BODLEY, *J.* — I concur with the result reached by Judge Garb but would dismiss the juvenile's motion squarely upon the ground that neither the constitutional concept of double jeopardy nor the so-called supervisory rule laid down in Campana II applies to juvenile proceedings.

Since the decision in In re Gault, 387 U.S. 1 (1967), and the application of Gault's very reasonable due process requirements to juvenile hearings, counsel, and sometimes the court, I think, tend to lose sight of the fact that juvenile hearings are *not* criminal trials and that a juvenile is not being tried for crime. Increasingly, it seems, counsel urge upon the court technical deficiencies in arrest, search and seizure, detention, and court proceedings as reasons why a juvenile hauled before the Juvenile Court upon a delinquency petition which

alleges the commission of crime, should not be discharged. In my view, this trend should be discouraged and reversed.

It must be remembered that the subject of the proceedings is always a "child" as that term is defined in section 2(1) of the Juvenile Court Act who, hopefully, will be the beneficiary of the benign purposes of that statute. Gault very pointedly, at page 21, held that the observance of due process standards did "not compel the States to abandon or displace any of the substantive benefits of the juvenile process." One of those benefits, it occurs to me, is a process which should avoid fostering in the juvenile the mind of a criminal bent upon "beating the rap." One of those benefits is to be brought face to face with the misdeed committed, its significance to society and to the juvenile's later life.

Gault, at page 30, specifically reaffirmed what it said in Kent v. United States, 383 U.S. 541 (1966), a certification case: " 'We do not mean . . . to indicate that the hearing to be held must conform with all of the requirements of a criminal trial or even of the usual administrative hearings but we do hold that the hearing must measure up to the essentials of due process and fair treatment.' " The court went on to say "We reiterate this view (the Kent view), here in connection with a juvenile court adjudication of 'delinquency,' . . ." Implicit in this statement would seem to be the suggestion that except for basic due process rules, as laid out in Gault, ordinary criminal trial rules and procedures should not be applied.

The Crimes Code, and in particular, section 110, concerning autre fois convict and autre fois acquit, has no application in a juvenile proceeding. We are told by our Supreme Court that Pa.R.Crim.P. 118,

concerning prompt arraignment, applies to juvenile proceedings, notwithstanding Pa.R.Crim.P. 1(a) which states that the criminal rules do *not* apply to "juvenile proceedings.": Geiger Appeal, 454 Pa. 51 (1973). We are also told that a court's consideration of a prior juvenile record in connection with a delinquency finding is a violation of due process: Wilson Appeal, 438 Pa. 425, 429 (1970), and there is much intermingling of criminal law language with juvenile law language, e.g., Wilson Appeal, 438 Pa. 425, 429 (1970), where use of terms "sentence," "new trial" and "sentencing" are found. But as said in Commonwealth v. Johnson, 211 Pa. Superior Ct. 62 (1967), the United States Supreme Court in Gault, did not intend "to emasculate" juvenile court laws and proceedings but rather, merely insure elementary fairness and due process.

The more we permit ourselves to become engrossed with criminal rules and constitutional concepts, such as double jeopardy, the further we retreat from the reality that unless and until a juvenile proceeding is certified to criminal court, we are dealing with children under a Juvenile Act. In doing so, we lose sight of the purposes of the act:

"(1) To preserve the unity of the family whenever possible and provide for the care, protection, and wholesome mental and physical development of children coming within the provisions of this act;

"(2) Consistent with the protection of the public interest, to remove from children committing delinquent acts the consequences of criminal behavior, and to substitute therefor a program of supervision, care and rehabilitation;

"(3) To achieve the foregoing purposes in a fam-

ily environment whenever possible, separating the child from parents only when necessary for his welfare or in the interests of public safety;

"(4) To provide means through which the provisions of this act are executed and enforced and in which the parties are assured a fair hearing and their constitutional and other legal rights recognized and enforced.": 11 PS §50-101.

I conclude that double jeopardy and the supervisory rule of Campana do not apply to juvenile proceedings. A child under juvenile law concept, I submit, cannot be "subject for the same offense to be twice put in jeopardy of life or limb."