2016 PA Super 132

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| JULLIAN MICKEL | |
| Appellant | No. 1459 WDA 2015 |

Appeal from the Order August 31, 2015
In the Court of Common Pleas of Erie County
Criminal Division at No(s): CP-25-CR-0000527-2015

BEFORE:  GANTMAN, P.J., OLSON and FITZGERALD,* JJ.

OPINION BY OLSON, J.:                                    **FILED JUNE 22, 2016**

Appellant, Jullian Mickel, appeals from the judgment of sentence entered on August 31, 2015, as made final by the denial of Appellant's post-sentence motion on September 16, 2015.  We affirm.

In December 2014, Appellant was arrested and charged with a number of crimes that arose out of a shooting.  As averred in the affidavit of probable cause:

> On [November 29, 2014,] at approximately [1:23 a.m., witness A'Jaza Mathis ("Ms. Mathis")] went to [a strip club named Juliet's Gentlemen's Club ("Juliet's") in Erie, Pennsylvania].  [Ms.] Mathis' car was in the parking spot that is at the southwest corner of the establishment. [There] was a dark colored car parked directly in front of hers parked perpendicular.
>
> [Ms.] Mathis went to the door of [Juliet's] in order to enter into [Juliet's].  As [Ms.] Mathis was at the doorway[,] she observed [Appellant] inside trying to exit from inside [Juliet's].  [Ms.] Mathis realized something was happening

*Former Justice specially assigned to the Superior Court.

that she did not want to be a part of so she went back to her car. While [Ms.] Mathis was in the backseat of her car she witnessed [Appellant] walk by and [go to] the dark colored car. [Ms.] Mathis witnessed [Appellant go to] the back driver side of the dark colored car parked perpendicular to her car.

[Ms.] Mathis then witnessed [Appellant] come out from the dark colored car in a crouched position. [Ms.] Mathis watched [Appellant] outstretch with both of his hands a handgun, slowly stand up, [and] point the gun east[-]bound. [Ms.] Mathis witnessed [Appellant] right in front of her car. [Ms.] Mathis then looked towards the door area of [Juliet's] and witnessed Jaree Warren exit from inside of the establishment. As Jaree Warren was exiting the establishment[,] . . . [Ms.] Mathis witnessed [Appellant] shoot the handgun several times towards Jaree Warren. [Ms.] Mathis witnessed [Appellant] wearing black gloves and a black hoody while holding the black handgun.

[Ms.] Mathis witnessed Jaree Warren start running away from [Appellant in a southeasterly direction] across [W]est 8th [S]treet towards Country Fair. [Ms.] Mathis witnessed [Appellant] moving backwards [in a westerly direction] as he was firing the handgun at Jaree Warren. [Ms.] Mathis was close enough to the shooting that her ears were ringing from the shots being fired by [Appellant]. [Ms.] Mathis started panicking attempting to pull away from the parking spot to avoid the shooting and for her safety. [Ms.] Mathis headed west to get out of the area.

Affidavit of Probable Cause, 12/17/14, at 1.

On the eve of trial, Appellant filed a motion *in limine*, requesting that the trial court exclude a recorded telephone conversation that occurred between Appellant, a person named Marquise Barnett (who was an inmate in

the Erie County Prison) ("Inmate Barnett"), and "several other individuals."[1]

Appellant alleged:

> The initial [telephone call was placed by Inmate Barnett, from the Erie County Prison. The initial telephone recording] informs the call recipient that the call is subject to "recording and monitoring." During the calls, [Inmate Barnett] asks the initial call recipients to call other individuals. The call recipients accommodate [Inmate Barnett's] request and calls were placed either using [three-]way or by other means so that [Inmate Barnett] could speak with individuals other than the initial call recipient, including an individual who [the Commonwealth alleges was Appellant]. During those third, and sometimes fourth-party conversations, statements were made that the Commonwealth opines support the allegations [against Appellant].

Appellant's Motion *in Limine*, 7/13/15, at 1 (internal paragraphing omitted).

Appellant demanded that the recorded telephone conversations be excluded at trial because Appellant never received notice that the telephone conversation was subject to recording and monitoring. Appellant claimed that he thus never gave "prior consent to [the] interception" of his oral communication and that the interception violated Pennsylvania's Wiretap Act. **Id.** at 2; **see also** 18 Pa.C.S.A. § 5721.1(b) (concerning a motion to exclude, from a court proceeding, the contents of an illegally intercepted wire, electronic, or oral communication).

_____

[1] Although Appellant's motion *in limine* did not specify the date upon which the recorded telephone conversation took place, the evidence demonstrates that the recorded telephone conversation occurred on December 1, 2014.

The trial court denied Appellant's motion *in limine* and Appellant proceeded to a jury trial, where witness A'Jaza Mathis testified consistently with the statements that were recounted in the affidavit of probable cause. *See* N.T. Trial, 7/15/15, at 35-82.

Moreover, during trial, the Commonwealth played a recorded telephone conversation between Appellant and Inmate Barnett, which was recorded on December 1, 2014, two days after the shooting. The recording began with Inmate Barnett placing a telephone call from inside the Erie County Prison, to an unknown female individual. Prior to accepting Inmate Barnett's call, a recorded voice informed the female recipient that the telephone call was being placed by an inmate at the Erie County Prison and that the call was subject to recording and monitoring. The female accepted the call and Inmate Barnett told the female recipient to call a person named "Mumu" on her telephone, so that Inmate Barnett could speak with Mumu *via* a three-way line. The female recipient then telephoned Mumu and placed him directly on the call with Inmate Barnett.

When Mumu was on the phone, Inmate Barnett told Mumu to telephone Appellant and place Appellant on a three-way conversation with them.[2] Appellant entered into the conversation and Inmate Barnett asked

_____

[2] In the recording, Inmate Barnett did not use Appellant's name; rather, he told "Mumu" to telephone "Juice." However, during trial, Detective Gregory L. Baney, Jr. identified "Juice" as Appellant. N.T. Trial, 7/15/15, at 91.

Appellant to explain "what happened." Appellant declared that, at some time prior, Jaree Warren was "looking at [him] funny." Appellant told Inmate Barnett that "the next night," he and a group of individuals went to a nightclub called the Metropolitan. Appellant stated that he saw Jaree Warren at the Metropolitan and immediately got into an altercation with Warren. Following the altercation, Appellant left with his group of friends and they picked up a "jones" – which Detective Baney testified at trial was "street lingo for a gun." N.T. Trial, 7/15/15, at 94. Appellant told Inmate Barnett that they then traveled to "the strip club." According to Appellant, when he was attempting to leave the strip club, he again saw Jaree Warren; Appellant declared that Warren and Warren's group of friends jumped and beat Appellant.

The jury found Appellant guilty of aggravated assault, firearms not to be carried without a license, possession of instruments of crime, and recklessly endangering another person.[3, 4, 5, 6] On August 31, 2015, the trial

_____

[3] 18 Pa.C.S.A. §§ 2702(a)(4), 6106(a)(1), 907(a), and 2705, respectively.

[4] The trial court also found Appellant guilty of the summary offense of "firearms discharge prohibited." City of Erie, Erie County, Pa. Gen. Offenses Code, Art. 725.05.

[5] The jury found Appellant not guilty of attempted homicide.

[6] Jaree Warren, the victim in this case, died on December 6, 2014. N.T. Trial, 7/15/15, at 102.

court sentenced Appellant to serve an aggregate term of 72 to 144 months in prison for his convictions. N.T. Sentencing, 8/31/15, at 12-14.

Following the denial of Appellant's post-sentence motion, Appellant filed a timely notice of appeal to this Court. Appellant raises two claims on appeal:

> [1.] Whether the trial court erred in denying [] Appellant's motion *in limine* pertaining to the admissibility of intercepted prison recordings[?]
>
> [2.] Whether the evidence was sufficient to find [] Appellant guilty of the charges where the Commonwealth's entire case was based off of one unreliable eye witness[?]

Appellant's Brief at 3 (internal capitalization omitted).

Appellant first claims that the trial court erred when it denied his motion *in limine* to exclude the recorded, December 1, 2014 telephone conversation. This claim fails.

We have explained:

> [Our] standard of review for a trial court's evidentiary rulings is narrow. The admissibility of evidence is solely within the discretion of the trial court and will be reversed only if the trial court has abused its discretion. An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record.

***Commonwealth v. Mendez***, 74 A.3d 256, 260 (Pa. Super. 2013) (internal quotations and citations omitted). Moreover, "[t]o constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or

- 6 -

prejudicial to the complaining party." ***Commonwealth v. Lopez***, 57 A.3d 74, 81 (Pa. Super. 2012) (internal quotations and citations omitted).

Interpreting the language of Pennsylvania's Wiretap Act is a pure question of law and thus demands a *de novo* standard of review. ***Commonwealth v. Deck***, 954 A.2d 603, 606 (Pa. Super. 2008).

As our Supreme Court explained, "Pennsylvania's Wiretap Act is generally modeled after the federal analogue, 18 U.S.C. §§ 2510-2520. The federal legislation authorizes states to adopt coordinate statutes permitting the interception of wire, oral, or electronic communications and to grant greater, but not lesser, protection than that available under federal law." ***Commonwealth v. Spangler***, 809 A.2d 234, 237 (Pa. 2002) (internal citations omitted). Further, since Pennsylvania's Wiretap Act "emphasizes the protection of privacy," "the provisions of the Wiretap Act [must be] strictly construed." ***Id.***

Our interpretation of the Wiretap Act necessarily begins with the statutory language.

The Wiretap Act generally prohibits the intentional interception, disclosure, or use of a "wire, electronic or oral communication." 18 Pa.C.S.A. § 5703. However, the Wiretap Act contains enumerated "exceptions to [the] prohibition of interception and disclosure of communications." In relevant part, 18 Pa.C.S.A. § 5704 declares:

> It shall not be unlawful and no prior court approval shall be required under this chapter for:

. . .

(14) An investigative officer, a law enforcement officer or employees of a county correctional facility to intercept, record, monitor or divulge any telephone calls from or to an inmate in a facility under the following conditions:

(i) The county correctional facility shall adhere to the following procedures and restrictions when intercepting, recording, monitoring or divulging any telephone calls from or to an inmate in a county correctional facility as provided for by this paragraph:

(A) Before the implementation of this paragraph, all inmates of the facility shall be notified in writing that, as of the effective date of this paragraph, their telephone conversations may be intercepted, recorded, monitored or divulged.

(B) Unless otherwise provided for in this paragraph, after intercepting or recording a telephone conversation, only the superintendent, warden or a designee of the superintendent or warden or other chief administrative official or his or her designee, or law enforcement officers shall have access to that recording.

(C) The contents of an intercepted and recorded telephone conversation shall be divulged only as is necessary to safeguard the orderly operation of the facility, in response to a court order or in the prosecution or investigation of any crime.

(ii) So as to safeguard the attorney-client privilege, the county correctional facility shall not intercept, record, monitor or divulge any conversation between an inmate and an attorney.

(iii) Persons who are calling into a facility to speak to an inmate shall be notified that the call may be recorded or monitored.

(iv) The superintendent, warden or a designee of the superintendent or warden or other chief administrative

official of the county correctional system shall promulgate guidelines to implement the provisions of this paragraph for county correctional facilities.

18 Pa.C.S.A. § 5704.

On appeal, Appellant does not claim that the Erie County Prison or a law enforcement officer violated or failed to follow any of the above listed conditions. More specifically, Appellant does not claim: that the prison failed to notify Inmate Barnett "in writing that . . . [his] telephone conversations may be intercepted, recorded, monitored or divulged;" that an unauthorized person had access to the telephone recording after it was made; or, that the "superintendent, warden or . . . other chief administrative official in the county correctional system [failed to] promulgate guidelines to implement the provisions of" 18 Pa.C.S.A. § 5704(14). Moreover, Appellant was not Inmate Barnett's attorney, Appellant did not "call[] into [the] facility," and the contents of the intercepted conversation were divulged "as [] necessary . . . in the prosecution or investigation of [a] crime." 18 Pa.C.S.A. § 5704(14).

Rather, on appeal, Appellant simply claims that "he did not [hear] the recorded message played at the beginning of the call[,] notifying [the recipient of Inmate Barnett's call] that [the call] would be recorded." Appellant's Brief at 7-8. According to Appellant, because he was not notified of the recording, he did not give his consent to the recording and, because of this, the recording violated the Wiretap Act and the admission of the

recording at trial was in error. *Id.* at 6-8; *see also* 18 Pa.C.S.A. § 5721.1(b).

Appellant's claim fails based upon the plain language of the Wiretap Act. As noted above, the Wiretap Act provides that: "[i]t shall not be unlawful and no prior court approval shall be required under this chapter for . . . [a]n investigative officer, a law enforcement officer or employees of a county correctional facility to intercept, record, monitor or divulge **any telephone calls from or to an inmate** in a facility **under the following conditions**. . . ." 18 Pa.C.S.A. § 5704(14) (emphasis added). The listed conditions in Section 5704(14) simply do not include any requirement that each and every individual who speaks to an inmate on a telephone be notified that the call is being recorded. *See id.* Indeed, insofar as notification is concerned, Section 5704(14) requires only that "**all inmates of the facility** [] be notified in writing that . . . their telephone conversations may be intercepted, recorded, monitored or divulged" and that "[p]ersons **who are calling into the facility** to speak to an inmate [] be notified that the call may be recorded or monitored." 18 Pa.C.S.A. § 5704(14) (emphasis added). Again, Appellant does not claim that the facility failed to notify Inmate Barnett "in writing that . . . [his] telephone conversations may be intercepted, recorded, monitored or divulged" and Appellant did not call into the facility. Therefore, the conditions concerning notification in 18 Pa.C.S.A. § 5704(14) do not provide Appellant with an avenue for relief; and, since Appellant does not claim that any of the actual

conditions contained in Section 5704(14) were lacking, Appellant's claim on appeal fails. Under the plain language of Section 5704(14), "[i]t [was not] unlawful and no prior court approval [was] required . . . for . . . [a]n investigative officer, a law enforcement officer or employees of [the Erie County Prison] to intercept, record, monitor or divulge" the telephone call Inmate Barnett originally placed from inside the Erie County Prison on December 1, 2014. *See* 18 Pa.C.S.A. § 5704(14).

For Appellant's second claim on appeal, Appellant contends that the evidence was insufficient to support his convictions. The claim fails.

We review Appellant's sufficiency of the evidence challenge under the following standard:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for [that of] the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

- 11 -

*Commonwealth v. Brown*, 23 A.3d 544, 559-560 (Pa. Super. 2011) (*en banc*), *quoting* *Commonwealth v. Hutchinson*, 947 A.2d 800, 805-806 (Pa. Super. 2008).

On appeal, Appellant claims that the evidence was insufficient to support his convictions because "the Commonwealth's entire case was based off of one unreliable eye witness . . . who came forward several weeks after the incident and only after the Erie Police Department caught her with a large stash of drugs." Appellant's Brief at 8-9. This constitutes a challenge to the credibility of the Commonwealth's witness and, thus, constitutes a challenge to the weight of the evidence – not to the sufficiency of the evidence. *Commonwealth v. Palo*, 24 A.3d 1050, 1055 (Pa. Super. 2011) ("[t]he sum of [a]ppellant's sufficiency argument is that evidence was insufficient because 'the entire case of the Commonwealth rested on the sole testimony of his disgruntled former girlfriend who went to police to keep him away from their son when they had a custody dispute.' Directed entirely to the credibility of the Commonwealth's chief witness, [a]ppellant's claim challenges the weight, not the sufficiency, of the evidence"). Therefore, Appellant's final claim on appeal necessarily fails.[7]

---

[7] We note that Appellant did not raise a weight of the evidence claim before the trial court. Therefore, Appellant waived any weight of the evidence claim he might have possessed. Pa.R.Crim.P. 607(A); Pa.R.A.P. 302(a) ("[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal"). Moreover, we note that Appellant had a full and fair opportunity to cross-examine Ms. Mathis and was able to introduce evidence
*(Footnote Continued Next Page)*

Judgment of sentence affirmed.  Jurisdiction relinquished.

Gantman, P.J., joins this opinion.

Fitzgerald, J., concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 6/22/2016


---

*(Footnote Continued)* ————————————

that:  on December 14, 2014, Ms. Mathis was caught with 12 individual baggies of cocaine, each weighing 25 grams and provided a false name to law enforcement; when the police were questioning Ms. Mathis regarding the drugs, Ms. Mathis provided information regarding Appellant's November 29, 2014 shooting; and, at the time of trial, Ms. Mathis had not been charged with any crime arising out of the December 14, 2014 drug discovery.  ***See*** N.T. Trial, 7/15/15, at 57-64 and 83-84.  Notwithstanding this evidence, the jury believed Ms. Mathis' testimony and concluded that, on November 29, 2014, Appellant fired a gun in an attempt to cause bodily injury to another person.  Such is the prerogative of the jury.  ***Commonwealth v. Clark***, 311 A.2d 910, 912 n.2 (Pa. 1973) ("[i]t is the prerogative of the jury to believe all, part or none of the testimony offered").