J-S66005-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| AKEEM KEVIN MALIK WASHINGTON | |
| Appellant | No. 2067 MDA 2015 |

Appeal from the Judgment of Sentence October 30, 2015
In the Court of Common Pleas of Lancaster County
Criminal Division at No(s): CP-36-CR-0000152-2015

BEFORE:  BOWES, PANELLA AND JENKINS, JJ.

MEMORANDUM BY BOWES, J.:                    **FILED DECEMBER 13, 2016**

Akeem Kevin Malik Washington appeals from the judgment of sentence of one to two years imprisonment that was imposed after he was convicted at a nonjury trial of disorderly conduct and terroristic threats.  We affirm.

We first recite the pertinent facts.  On December 28, 2014, James King was working as a doorman for a Yorgos Restaurant, Lancaster, Pennsylvania.  At 1:30 a.m., in anticipation of closing, Mr. King's superior instructed him to cease allowing people inside the establishment.  Appellant arrived at the restaurant with his cousin, Dustin Salsbury, and an unidentified male, and they were denied entry.  Shortly thereafter, Mr. King's boss allowed two females, who were his friends, inside.  Appellant and his cohorts returned to

the door and demanded to know why the two women had been permitted entry when they had been refused service.

Appellant and his cousin started to yell obscenities, the unidentified male spat upon Mr. King, and all three men entered the restaurant for a short period and then left. Lancaster City Police Officers Gregory Berry and Erik Pannone were on patrol in the area when they heard a commotion in the parking lot of Yorgos Restaurant. They observed Mr. King signal for help and point to the unidentified man.

Officer Berry approached the unknown person while Officer Pannone asked for identification from Appellant and his cousin. They responded, "[F] you, we're not giving you sh__." N.T. Bench Trial, 10/29/15, at 30. Officer Pannone asked Appellant to remove his right hand from this pocket when Appellant replied, "F___ you, n____, we ain't doing sh__. We are not doing anything. Leave us alone, I'm not taking my hands out of my pockets." *Id*. Officer Berry overhead Appellant's remarks and reiterated the command to Appellant, who retorted, "[F]___ you, n____. I ain't doing nothing. I'm not taking my hand out of my pocket." *Id*. at 32.

Officer Berry grabbed Appellant's right wrist in order to extricate his hand from the pocket when Appellant, who was one foot taller than the officer, pulled back his arm and made a fist with his hand. Officer Berry grabbed Appellant's shirt and told him to sit down. Appellant then said, "[F]

you, I ain't doing anything. I ain't sitting down." *Id*. at 33. Appellant, who was intoxicated, began to struggle with Officer Berry.

Officer Pannone deployed his Taser, striking Appellant on the back. Unaffected, Appellant charged at Officer Berry who employed a strike to the neck designed to stun a person and swept Appellant's legs out from under his body. Appellant landed on the ground and was told that he was under arrest. Appellant physically resisted the officers, at one point striking Officer Pannone's right eye with his elbow. After being placed in handcuffs, Appellant persisted in shouting obscenities at the officers.

Due to Appellant's size and state of agitation, Sergeant Philip Berkheiser, who had been called to assist his fellow officers, met Officers Berry and Pannone in the police station's garage. Officer Berkheiser recognized Appellant from a previous arrest. He informed the other two officers to be careful because Appellant had been arrested about ten years beforehand for cutting the throat of his girlfriend and nearly killing her.

Officer Berkheiser testified that immediately thereafter, Appellant, whose back was to the officer, turned his head, looked at Officer Berkheiser in the eye, and said, "I'm going to f___ you up, too." *Id*. at. 65. The three officers escorted Appellant to a padded holding cell in the police station. Appellant's outer clothing and jewelry were removed. Medical personnel were called to check on Appellant since he had been tased. As Officer

Berkheiser was leading them away, Appellant smirked and said to him,

"[I]t's okay because I will be out in six months anyhow." *Id*. at 67.

Based upon this evidence, the court found Appellant guilty of disorderly conduct and terroristic threats, and acquitted him of resisting arrest and public drunkenness.

Appellant presents the following issues on appeal:

> I. Did the court err in denying [Appellant's] Motion to Dismiss Pursuant to the Compulsory Joinder Rule set forth in 18 Pa.C.S. §110, where the instant charges should have been consolidated with the charges docketed to Information Number 862 of 2015?
>
> II. Was the evidence presented by the Commonwealth insufficient to sustain [Appellant's] conviction of terroristic threats, where the evidence did not prove beyond a reasonable doubt that [Appellant] made a threat to commit a crime of violence with intent to terrorize another, rather than out of transitory anger, while [Appellant] was intoxicated and in an agitated state?

Appellant's brief at 4.

Appellant's first position is that the present charges against him should have been dismissed under the compulsory joinder rule outlined in 18 Pa.C.S. § 110, which was designed to codify the double jeopardy principles announced by our Supreme Court in ***Commonwealth v. Campana***, 304 A.2d 432, 441 (Pa. 1973), *vacated and remanded,* 414 U.S. 808 (1973), *reinstated,* 314 A.2d 854 (Pa. 1974). ***See Commonwealth v. Laird***, 988 A.2d 618, 628 (Pa. 2010) ("Pennsylvania's compulsory joinder rule . . . is designed to protect a defendant's double-jeopardy interests where the

Commonwealth initially declines to prosecute him for the present offense, electing to proceed on different charges stemming from the same criminal episode.") Since Appellant position pertains to constitutional and statutory issues, our standard of review is *de novo*. **Commonwealth v. Vargas**, 947 A.2d 777 (Pa.Super. 2008).

The following facts are relevant to the resolution of this issue. Following his arrest, Appellant was remanded to the custody of Lancaster County Prison. While incarcerated, Appellant was housed with Treymane Jones. On December 28 and December 29, 2014, Appellant told Mr. Jones that he wanted to kill the three officers involved in his arrest, and he solicited Mr. Jones' aid in luring and killing not only the three officers, but also Sergeant Berkheiser's family. Mr. Jones alerted prison officials to Appellant's plot, and four counts of solicitation to commit homicide were filed against Appellant at criminal action number 862-2015. Appellant proceeded to trial in that action first and was convicted of three counts of solicitation to commit murder.[1] He then moved to have the present charges dismissed

_____

[1] The trial court indicates that Appellant agreed to allow the two criminal actions to proceed to trial separately. Trial Court Opinion, 1/22/16, at 3. If this fact was true, we would be inclined to find that the present issue is waived. However, the record does not support any inference that Appellant assented to having the trials proceed individually. The Commonwealth instituted separate criminal actions for the solicitation offenses and these crimes. In a document containing both trial court docket numbers, Appellant agreed to postpone the date of trial in both matters, but there is nothing in
*(Footnote Continued Next Page)*

- 5 -

under the compulsory joinder statute.  On appeal, we consider the propriety of the trial court's refusal of that motion.

The compulsory joinder statute states:

Although a prosecution is for a violation of a different provision of the statutes than a former prosecution or is based on different facts, it is barred by such former prosecution under the following circumstances:

(1) The former prosecution resulted in an acquittal or in a conviction as defined in section 109 of this title (relating to when prosecution barred by former prosecution for the same offense) and the subsequent prosecution is for:

_(Footnote Continued)_ ─────────────

that document suggesting that he agreed to have the trials proceed separately.

In his motion to dismiss under § 110 filed herein, Appellant reported that the trials in both criminal actions were listed for the same day.  When that day arrived, "the Commonwealth indicated that, viewing the two cases as separate, it would not file a motion to consolidate and would proceed to trial on the matters separately."  Motion to dismiss, 8/20/6, at 2.  The solicitation trial commenced at that time.  The notes of testimony from the solicitation trial are in this record, and they contain no proof that Appellant agreed to individual trials.  In the motion to dismiss, Appellant admitted that he did not object when the Commonwealth wanted to try the solicitation charges first, but he did not agree with the trials proceeding at different times.  He simply stood silent.  The Commonwealth does not refute this version of what occurred and never has urged a finding of waiver regarding Appellant's § 110 claim.

Thus, the record indicates the following.  The Commonwealth decided to institute and try these cases separately.  The fact that Appellant raised no objection to separate trials until filing the motion to dismiss under § 110 in this case does not equate to assent to the lack of joinder.  He merely elected not to alert the Commonwealth that he would be raising a compulsory joinder issue in this matter after the first trial transpired.

(i) any offense of which the defendant could have been convicted on the first prosecution;

(ii) any offense based on the same conduct or arising from the same criminal episode, if such offense was known to the appropriate prosecuting officer at the time of the commencement of the first trial and occurred within the same judicial district as the former prosecution unless the court ordered a separate trial of the charge of such offense; or

(iii) the same conduct[.]

18 Pa.C.S. § 110. The compulsory joinder statute bars a subsequent prosecution if:

(1) the former prosecution resulted in an acquittal or conviction; (2) the current prosecution was based on the same criminal conduct or arose from the same criminal episode; (3) the prosecutor in the subsequent trial was aware of the charges before the first trial; and (4) all charges [are] within the same judicial district as the former prosecution.

**Commonwealth v. Reid**, 77 A.3d 579, 582 (Pa. 2013) (citation omitted).

Appellant first maintains that these charges must be dismissed under § 110(1)(i) as he could have been convicted of them in the solicitation trial. He observes that the three officers in question all testified therein as to the events at Yorgos Restaurant and the arrest that followed. We cannot agree with this position since the evidence in question was not introduced in the solicitation trial as substantive proof of Appellant's guilt of the offenses at

issue herein, *i.e.*, disorderly conduct, resisting arrest, public drunkenness, and terroristic threats.

Instead, the proof about these crimes was limited at the trial in criminal action 152-2015 to establishing how Appellant came to know the identity of the officers whom he threatened and his motive for wanting them murdered. N.T. Jury Trial 862-2015, Vol. I, 8/10/15, at 49-53. Before the three police officers testified at the solicitation trial as to the events surrounding Appellant's arrest, the jury was given a clear limiting instruction. Specifically, the trial court informed the jury that the proof was being offered for a "very, very limited purpose. It's providing some context within which you can evaluate the charges that are in this case." N.T. Jury Trial 862-2015, Vol. II, 8/11/15, at 280. The trial court told the jury quite plainly that the crimes at issue in the present criminal action "are not presently before you." ***Id***. It continued, "I want to make sure you understand this. This is of utmost importance, and the law does not allow you to infer guilt because of these other charges." ***Id***. at 281. The court additionally stated, "You are not dealing with those [charges]. Those are not for you to address." ***Id***.

Thus, the jury was told that the evidence about the events at Yorgos Restaurant and the police station was not being admitted as substantive proof and that the charges arising from the incidents at those locales were not before it to decide. The officers in question offered a truncated version

of the events at issue in this matter. Since the proof in question was not admitted for its substantive value, Appellant could not, at the prior trial, have been convicted of these offenses. Therefore, § 110(1)(i) is not implicated herein.

Appellant also maintains that § 110(1)(ii) applies since his interaction with the officers at Yorgos Restaurant and the police station were part of the same criminal episode as his solicitation to murder the officers while he was in jail with Mr. Jones. **Commonwealth v. Hude***,* 458 A.2d 177 (Pa. 1983), constitutes the seminal case in determining whether the same criminal episode is at issue. Therein, our Supreme Court instructed the courts to look at the temporal and logical relationship between the charges. When the charges occur simultaneously, they are part of a single criminal episode. **Id.** When the timing of the crimes, as in the present case, are interrupted, their temporal proximity as well as their logical relationship must be examined to decide if they are part of the same criminal episode. **Id***.*

> In ascertaining whether a number of statutory offenses are "logically related" to one another, the court should initially inquire as to whether there is a substantial duplication of factual, and/or legal issues presented by the offenses. If there is duplication, then the offenses are logically related and must be prosecuted at one trial.

**Reid**, **supra** at 582. The **Reid** Court reiterated that "the determination of whether the logical relationship prong of the test is met turns on whether the offenses present a **substantial** duplication of issues of fact and law.

Such a determination depends ultimately on how and what the Commonwealth must prove in the subsequent prosecution." ***Id***. at 585 (emphasis in original).

In this case, there was a temporal break in the events. This temporal break was significant in that Appellant committed these crimes during his arrest and the solicitation offenses after he had been processed and placed in jail. The charges herein occurred in a distinct location, the parking lot and holding cell, from the solicitation, which occurred after Appellant was jailed. Thus, there was no temporal proximity. We also conclude that the two cases were not logically related. The offenses of terroristic threats, resisting arrest, disorderly conduct, and public drunkenness have no common elements with solicitation to commit murder.

Likewise, there was no substantial duplication of facts. While the incident occurring at the restaurant and police station provided the motivation for the solicitations to murder, the latter crimes were proven entirely by the testimony of Mr. Jones, who had no knowledge about the present crimes and who did not testify at trial herein. The facts supporting the two prosecutions were distinct. We thus reject the position that the present offenses were part of the same criminal episode as the solicitation charges. ***Accord Commonwealth v. Purnell***, 516 A.2d 1203 (Pa.Super. 1986) (rejecting compulsory joinder argument concerning joinder of action instituted due to defendant's arrest for disorderly conduct and a separate

prosecution flowing from defendant's assault of an officer after he arrived at the police station).

Appellant also assails the sufficiency of the evidence supporting his conviction for terroristic threats. We examine this question thusly:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for that of the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

***Commonwealth v. Mickel***, 142 A.3d 870, 876 (Pa.Super. 2016) (citation omitted).

We first examine the elements of terroristic threats. "A person commits the crime of terroristic threats if," *inter alia*, "the person communicates, either directly or indirectly, a threat to commit any crime of violence with intent to terrorize another[.]" 18 Pa.C.S. § 2706(a)(1). In the present case, Appellant "acknowledges that a threat was made to Sergeant

Berkheiser, but contents that this threat was made out of transitory anger, and not with intent to terrorize." Appellant's brief at 34.

In our decision *In re B.R.*, 732 A.2d 633, 638 (Pa.Super. 1999), we observed that "statements which are 'spur-of the moment,' that is the product of a heated exchange between parties made out of hysteria or anger that do not trigger foreseeable immediate or future danger, are not to be criminalized by 18 Pa.C.S.A. § 2706." However, where there is no heated argument between a defendant and his victim and the threats are unprovoked and delivered in "a deliberate, matter of fact manner," a terroristic threats conviction will be upheld. *Id*.; *see also In re J.H.,* 797 A.2d 260 (Pa.Super. 2002) (evidence was sufficient to support that juvenile committed acts constituting terroristic threats when threat was not leveled during an argument and was delivered in a calm and calculated manner).

In this case, we conclude that *B.R.* and *J.H.* apply. None of the officers involved in this interdiction was arguing with Appellant. Instead, over the course of a significant span of time, Appellant was hurling profanity and racist insults at them. There is no indication that the officers engaged in exchanges with Appellant; rather, they professionally performed their duty to subdue Appellant after he initiated a struggle with Officer Berry.

As to the specific threats involved herein, Sergeant Berkheiser reported the following. When Appellant arrived at the police station, Sergeant Berkheiser immediately recognized him and told his fellow officers

to exercise caution since Appellant had cut his girlfriend's throat and nearly killed her. There was no indication that Appellant was agitated or angry at that time. Appellant's back was turned toward Sergeant Berkheiser when the seargant proffered his warning, and Appellant turned around, stared directly into Sergeant Berkheiser's eyes, and said that he was going to harm him, as he had his girlfriend. Next, Appellant was taken into his holding cell and examined by medical personnel. Officer Berkheiser was leading the medical personnel from the jail when Appellant smirked and said to him, [I]t's okay because I will be out in six months anyhow." N.T. Bench Trial, 10/29/15, at 67.

This series of events indicate that Appellant had a settled purpose to threaten Officer Berkheiser and that he was not operating based upon transitory anger. There was no heated exchange between Appellant and his victim. Appellant was no longer angry and agitated, the threats were unprovoked, and they were delivered in a calm and deliberate manner. Hence, we find that the evidence was sufficient to support his conviction for terroristic threats.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/13/2016