J-S66011-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| v. | |
| ELLIS CHUNDU DONES | |
| Appellant | No. 1968 MDA 2015 |

Appeal from the Judgment of Sentence June 3, 2015
In the Court of Common Pleas of Berks County
Criminal Division at No(s): CP-06-CR-0002358-2014

BEFORE:  BOWES, PANELLA AND JENKINS, JJ.

MEMORANDUM BY BOWES, J.:                    **FILED FEBRUARY 15, 2017**

Ellis Chundu Dones appeals from the judgment of sentence of five to ten years incarceration imposed following his conviction for failing to comply with sexual offender registration requirements under the Sex Offender Registration and Notification Act (hereinafter "SORNA").[1]  We affirm the conviction but vacate judgment of sentence.

---

[1] On December 20, 2012, the Sex Offender Registration and Notification Act became effective.  42 Pa.C.S. §§ 9799.10–9799.41.  Pennsylvania courts have referred to this act as "Megan's Law IV."  **Commonwealth v. Britton**, 134 A.3d 83, 84 (Pa.Super. 2016).  In this decision, we generically refer to the body of sexual offender laws as "Megan's Law."

The Commonwealth established the following facts at trial. Appellant is required to register as a sex offender in Pennsylvania due to a 2004 New York conviction for unlawful imprisonment of the first degree, N.Y. Penal Law § 135.10. Appellant's conviction required him to register as a sex offender in New York. N.Y. Correction Law § 168-a (requiring any person convicted of, *inter alia*, N.Y. Penal Law § 135.10, to register as sex offender where the victim is under seventeen). Appellant was subsequently classified as a level three offender by New York's Board of Examiners of Sex Offenders and was required to register annually for life. N.T., 6/2-3/15, at 280.

Sometime thereafter, Appellant moved to Pennsylvania. State Police Corporal James Gallagher, a field liaison for the Pennsylvania State Police's Megan's Law division, testified as a records custodian. *Id*. at 131-32. The records established that Appellant first submitted documentation in Pennsylvania on August 13, 2008.[2] *Id*. at 141.

On May 15, 2009, Officer William Stickler of the Anville Township Police began an investigation at the address listed by Appellant on the August 13, 2008 form. *Id*. at 125. While investigating, Officer Stickler learned that Appellant had not resided there as of April 30, 2009.

---

[2] The applicable version of Megan's Law at that time, codified at 42 Pa.C.S. § 9795.1, effective January 1, 2007 through December 7, 2008, required certain out-of-state offenders to register. Appellant's duty to register is not at issue.

Appellant's failure to update his residency resulted in a charge of one count of failing to register, 18 Pa.C.S. § 4915(a)(1). On February 2, 2011, Appellant entered a guilty plea and was sentenced, on March 23, 2011, to twenty-seven months to five years incarceration.

Sometime in 2013, Pennsylvania State Parole Agent Scott Yarnell assumed supervision of Appellant. *Id*. at 83. Appellant's precise date of parole was not explicitly established; however, the Commonwealth introduced a document dated September 6, 2013 showing that Appellant listed his residence as a halfway house in Greene County. *Id*. at 143, 327. The records also established that Appellant submitted a form, dated December 9, 2013, signed by a Pennsylvania Board of Probation and Parole Agent. *Id*. at 145, 331-32.

On December 13, 2013, Appellant visited the Reading state parole office. *Id*. at 85-86. In Agent Yarnell's presence, Appellant updated his address to 317 North 6th Street. *Id*. at 302. Appellant also received a packet of documents informing Appellant of his obligations. *Id*. at 86-87. This form informed Appellant that, *inter alia*, he "must appear **in-person**, within three (3) business days, at any approved registration site to notify the Pennsylvania State Police of . . . [a]ny change in residence[.]" *Id*. at 300 (emphasis in original). At the conclusion of the meeting, Appellant was told that he would need to update any change of address at an approved

registration site, and that the failure to do so could result in prosecution. *Id*. at 119-20.

On March 12, 2014, Appellant updated his address to 415-417 Walnut Street. N.T. at 146. On April 1, 2014, Agent Yarnell assisted Appellant in moving to ADAPPT, a group home located on Walnut Street.[3] *Id*. at 90. Later that evening, Agent Yarnell received a phone call from the home's supervisor indicating that Appellant left the facility. *Id*. at 91.

Two days later, Agent Yarnell received a phone call from Appellant, during which Agent Yarnell advised Appellant that he was in violation of parole and "would be turning [the] parole violation into a new criminal charge." *Id*. at 92. Appellant did not provide Agent Yarnell with a new address. *Id*. at 114. On April 17, 2014, the Megan's Law unit sent a letter to the Reading police department, requesting investigation to determine if Appellant had, in fact, failed to update his residency. *Id*. at 95.

On May 1, 2014, Appellant sent Agent Yarnell an email, stating he had learned that the police were looking for him. Appellant wrote he did not want to go back to jail, and that Agent Yarnell or his co-workers "will have to

_____

[3] According to the Berks County Social Services Directory website maintained by Reading Area Community College, ADAPPT House is a residential facility, contracted to the Pennsylvania Department of Corrections, which houses certain chemically dependent parolees and parole candidates for the purposes of preparing them for independent living. http://www.racc.edu/BCSS/a020.aspx

shoot me dead if you can catch me." *Id*. at 305. Appellant was arrested at a bar in Reading ten days later. His residency information was not updated from April 1, 2014, through the date of his arrest. *Id*. at 171.

The jury found Appellant guilty at the sole count, and, on June 3, 2015, Appellant was sentenced to a mandatory minimum sentence of five to ten years incarceration. Post-sentence motions were duly filed and denied. Appellant timely appealed, the trial court and Appellant complied with Pa.R.A.P. 1925, and the matter is now ready for review. Appellant submits four issues for our consideration, reordered for ease of discussion.

> [A]. Whether retroactive application of SORNA to offenders who, at the time sentence was imposed, had no duty to register is unconstitutional on its face and as-applied to Appellant, where such retroactive application constitutes an unlawful *ex post facto* law under the U.S. and Pennsylvania Constitutions?
>
> [B]. Whether the verdict of guilty for Failure to Comply with Registration Requirements is contrary to the weight of the evidence presented at trial?
>
> [C]. Whether the trial court erred by instructing the jury to consider and determine whether the Commonwealth had demonstrated beyond a reasonable doubt that the Appellant had a prior conviction for Failure to Comply with Registration Requirements.
>
> [D]. Whether the trial court abused its discretion in denying Appellant's Motion in Limine and allowing Commonwealth to present evidence as to Appellant's prior conviction for Failure to Comply with Registration Requirements.

Appellant's brief at 5.

Appellant's first issue raises *ex post facto* challenges to Megan's Law. "No *ex post facto* law, nor any law impairing the obligation of contracts, or making irrevocable any grant of special privileges or immunities, shall be passed." Pa. Const. Art. I, § 17. The standard applied to determine a violation is identical under both the Pennsylvania Constitution and the United States Constitution. ***Commonwealth v. Rose***, 81 A.3d 123, 127 (Pa.Super. 2013).

Preliminarily, we note this issue presents a question of law and our standard of review is *de novo*. ***Commonwealth v. Britton***, 134 A.3d 83, 87 (Pa.Super. 2016). However, this issue has already been addressed by this Court. In ***Britton***, we observed that our decision in ***Commonwealth v. Perez***, 97 A.3d 747 (Pa.Super. 2014), "thoroughly analyzed whether SORNA constitutes an *ex post facto* law under the federal constitution."

> We observed that such a challenge must be evaluated under a two-step test, which was established by the U.S. Supreme Court in ***Smith v. Doe,*** 538 U.S. 84, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003). ***Perez,*** 97 A.3d at 751 (indicating that under ***Smith*** the two-step test requires the court to determine (1) whether the legislature intended the statutory scheme to be punitive, and (2) if not, whether the statutory scheme is so punitive in either its purpose or effect so as to negate the legislature's intention).
>
> With regard to the first step under ***Smith,*** we held the legislature specifically indicated that SORNA "shall not be construed as punitive[,]" and, therefore, the legislative intent in enacting the law was not to impose punishment. ***Perez,*** 97 A.3d at 751 (citing 42 Pa.C.S.A. § 9799.11(b)(2) (emphasis omitted)). Turning to the second step under ***Smith,*** this Court addressed whether SORNA constitutes "punishment" under the multi-factor test articulated in [***Kennedy v.***] ***Mendoza–***

- 6 -

*Martinez*[, 372 U.S. 144 (1963)]. After a thorough review, we concluded SORNA does not constitute "punishment." *Perez*, *supra*. Specifically upon balancing the *Mendoza–Martinez* factors, this Court held the following:

> Based on all of the[ ] considerations, we ultimately conclude that [the appellant] has not shown by the "clearest proof" that the effects of SORNA are sufficiently punitive to overcome the General Assembly's preferred categorization. Therefore, we further conclude that the retroactive application of SORNA to [the appellant] does not violate the *Ex Post Facto* Clause of the Federal Constitution.

*Perez*, 97 A.3d at 759 (citations omitted). Accordingly, as in *Perez*, we find Appellant is not entitled to relief on his federal *ex post facto* claim.

*Britton*, *supra* at 87–88. Appellant's brief recognizes that this matter has been settled but asks us to revisit the issue in light of the fact our Supreme Court has granted consolidated review of three cases on these questions:

1) Does the application of the Sex Offender Registration and Notification Act ("SORNA"), 42 Pa.C.S. § 9799.10 *et seq.,* to [petitioner] violate [petitioner's] procedural due process rights under the Federal and Pennsylvania Constitutions, when [petitioner] was no longer serving a criminal sentence at the time SORNA became effective?

2) Does SORNA violate the *Ex Post Facto* Clause of the Federal Constitution when SORNA's purpose or effect is so punitive that it constitutes a retroactive increase in punishment when applied to [petitioner]?

3) Does SORNA violate the *Ex Post Facto* Clause of the Constitution of the Commonwealth of Pennsylvania when SORNA's purpose or effect is so punitive that it constitutes a retroactive increase in punishment when applied to [petitioner]?

*Commonwealth v. Gilbert,* 135 A.3d 178 (Pa. 2016).  We remain bound by our precedent.  "It is beyond the power of a Superior Court panel to overrule a prior decision of the Superior Court . . . except in circumstances where intervening authority by our Supreme Court calls into question a previous decision of this Court." *Commonwealth v. Pepe*, 897 A.2d 463, 465 (Pa.Super. 2006).  Since the Court has yet to decide these cases, there is no intervening authority calling *Perez* into question.  No relief is due.

We next address Appellant's attack on the weight of the evidence. This issue was raised in a post-sentence motion.  *Commonwealth v. Lofton*, 57 A.3d 1270, 1273 (Pa.Super. 2012).  Our standard of review is well-settled.  We review the exercise of the trial court's discretion in ruling on the weight claim, not the underlying question of whether the verdict is against the weight of the evidence.  *Commonwealth v. Leatherby*, 116 A.3d 73, 82 (Pa.Super. 2015) (citing *Commonwealth v. Brown*, 23 A.3d 544, 558 (Pa.Super. 2011)).  "One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice." *Id*. at 82.

Appellant highlights that Agent Yarnell agreed Appellant signed the SORNA forms without reading them.  Appellant also maintains that he was led to believe that the parole office would take care of registration

requirements with the Pennsylvania State Police, as evidenced by the fact Agent Yarnell assisted Appellant with moving to ADAPPT.

However, Appellant ignores that Agent Yarnell testified Appellant was specifically told that any change of address must be reported within three business days to an approved registration site. N.T., 6/2-3/15, at 119. Additionally, the agent told Appellant on the phone that he was in violation of parole and risked a new criminal charge. *Id*. at 92. Therefore, the jury could choose to credit this testimony and find Appellant knew of the requirements. The trial court plainly did not abuse its discretion in denying the weight claim.

We now address the introduction of Appellant's prior conviction for failing to register under Megan's Law. Appellant filed a motion *in limine* seeking to bar admission of the prior conviction. N.T., 6/2-3/15, at 4. The trial court denied the motion, and, in its Pa.R.A.P. 1925(a) opinion, determined that the evidence of the "prior conviction of failure to comply with registration requirements was necessary to prove the 'knowing' element of the charge." Trial Court Opinion, 3/17/16 at 6.

Our review of a trial court's evidentiary rulings applies the following standard.

> The admissibility of evidence is solely within the discretion of the trial court and will be reversed only if the trial court has abused its discretion. An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable,

or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record.

***Commonwealth v. Mickel***, 142 A.3d 870, 874 (Pa.Super. 2016). Pa.R.E. 404 governs the admissibility of prior crimes.

Under the Pennsylvania Rules of Evidence, evidence of other bad acts or crimes that are not currently being prosecuted against the defendant are not admissible against the defendant to show his bad character or propensity to commit criminal acts." However, evidence of other crimes may be admissible where that evidence is used for some other purpose. Such purposes explicitly include "proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Rule 404(b)(2).

***Commonwealth v. Diehl***, 140 A.3d 34, 41 (Pa.Super. 2016) (citations omitted). Evidence is admissible for these other purposes "only if the probative value of the evidence outweighs its potential for unfair prejudice." Pa.R.E. 404(b)(2). The Rule is designed to avoid a predisposition in the minds of the jurors that the accused is guilty, thus stripping him of the presumption of innocence. ***Commonwealth v. Kinard***, 95 A.3d 279, 284 (Pa.Super. 2014) (*en banc*) (citing ***Commonwealth v. Spruill***, 391 A.2d 1048, 1049 (Pa. 1978)).

The Commonwealth submits that the trial court did not err under these principles because the prior conviction formed a part of the case and served to establish knowledge and absence of mistake. Appellant counters that the prejudicial value of the evidence outweighed its probative value, since the Commonwealth "had other evidence to demonstrate knowledge outside the fact of a prior conviction." Appellant's brief at 19. He asserts,

- 10 -

> The following evidence admitted at trial tended to provide proof of knowledge. The testimony of State Parole Officer Scott Yarnell and his verbal communications with Dones after Dones did not return to ADDAPT. (N.T. p. 92) His e-mail communications with Dones after Dones did not return to ADDAPT. (N.T. p. 94) Letters from Dones tending to show his understanding of the requirement to register after a change of address. (N.T. pp. 182, 184) Completed Pennsylvania offender registration packets with requirements for in-person reporting for a change in residence for August 13, 2008, September 6, 2013, December 9, 2013, December 13, 2013, and March 12, 2014. (Commonwealth's Exhibit 3, 7, 8, 9, 10). The fact of a prior conviction added redundant value to the existing and admissible evidence presented by Commonwealth.

*Id*. at 19-20. Appellant maintains that these other sources of evidence served the same purpose as the fact of his prior conviction. Thus, the prejudicial impact outweighed its probative value as the conviction was effectively cumulative.

We disagree. There is a significant difference between evidence establishing that Appellant was informed that he had a duty to register and evidence showing that he knowingly failed to register. Appellant argued that he did not knowingly violate the statute because he thought the registration requirements applied only to his duties as a parolee. Appellant stressed this point in closing.

> Officer Yarnell had him sign the notices without reading it. He believed his registration requirements were taken care of by parole. He believed any mistakes he made, it was being taken care of by parole. He thought if he made any mistake, he was violating his parole. He did not know he was violating any registration statute of the law.

*Id*. at 227-28.

- 11 -

Furthermore, Appellant argued that his New York conviction, which requires him to register under Megan's Law in Pennsylvania as an out-of-state offender, was not a sexual offense that would require registration had he committed that crime in this Commonwealth. N.T., 6/2-3/15, at 167-69. Appellant argued that the statutory schemes are confusing and Appellant did not fully understand the requirements. "The only way that anything is wrong with these registrations is because the statute says so. So you need to know that statute to know that it is wrong. It's not something that is inherent." *Id*. at 228. Obviously, the fact that Appellant was previously convicted of violating SORNA is powerful evidence that he knew his New York conviction imposed additional duties on him in this Commonwealth, establishing that he knowingly violated his obligations. Thus, we agree with the Commonwealth that the evidence of the prior conviction was relevant to establish an absence of mistake or his knowledge of the requirements.

Accordingly, we find that the trial court acted within the bounds of discretion when it concluded that the prior conviction was admissible and its probative value outweighed the potential prejudice. Indeed, Appellant's weight of the evidence argument undermines his present argument that the other evidence sufficed to provide proof of knowledge. Thus, no relief is due.

The final issue concerns the Commonwealth's invocation of a mandatory minimum sentence due to Appellant's prior conviction for failure

to register and the fact he was required to register under SORNA. The relevant provision provides, in pertinent part, as follows:

(2) Sentencing upon conviction for a second or subsequent offense shall be as follows:

(i) Not less than five years for an individual who:

(A) is subject to section 9799.13 and must register for a period of 15 or 25 years or life under section 9799.15 or a similar provision from another jurisdiction; and

(B) violated 18 Pa.C.S. § 4915.1(a)(1) or (2).

42 Pa.C.S. § 9718.4(a).

In *Alleyne v. United States*, 133 S. Ct. 2151 (2013), the United States Supreme Court held that any fact that increases a mandatory minimum sentence is an element of the crime that must be submitted to the jury. *Alleyne* is an application of *Apprendi v. United States*, 530 U.S. 466 (2000), in which the Court held that any fact that increases the penalty for a crime is an element of the crime. *Apprendi*'s rule is subject to an important exception: the fact of a prior conviction. *Apprendi*, *supra* at 490 (citing *Almendarez-Torres v. United States*, 523 U.S. 224 (1998)).

In an effort to comply with *Alleyne*, the trial court informed the jury that "there was a lot of evidence presented with regard to [the prior conviction]" and, in the event of a guilty verdict, the jury would have to decide "whether there was a prior conviction." N.T., 6/2-3/15, at 241.

- 13 -

Upon its verdict of guilty, the jury was given a separate slip and asked to find if Appellant had a prior conviction for failure to register.

Appellant contends that this instruction requires that we vacate his sentence, reasoning that the prior conviction exception means that a jury **must** be shielded from facts pertaining to the prior exception.[4] The Commonwealth concedes that the trial court erred, but asks us to find harmless error.

We disagree with Appellant's reading of **Apprendi**. The prior conviction exception to **Apprendi** simply means that a prosecuting entity is relieved from its normal burden of submitting and proving to the jury the fact of a prior conviction. That does not suggest it is somehow constitutional error to have that fact proven beyond a reasonable doubt. The jury was not asked to find the fact of the prior conviction until after it rendered a verdict of guilt. Thus, we agree that any error in submitting the issue to the jury was harmless.

Nevertheless, we find that Appellant's sentence is illegal. Following submission of the briefs in this matter, we decided **Commonwealth v. Blakney**, --- A.3d ---, 2016 WL 7322797 (Pa.Super. 2016), which declared

---

[4] We recognize Appellant's argument that the risk of unfair prejudice is the rationale behind the **Almendarez-Torres** rule. We note that the trial court submitted the issue of the prior conviction to the jury after it returned its verdict.

- 14 -

42 Pa.C.S. § 9718.4 unconstitutional in its entirety. Applying *Commonwealth v. Wolfe*, 140 A.3d 651 (Pa. 2016), we held that the proof at sentencing provision set forth in § 9718.4(b) is unconstitutional and not severable from the remainder of the statute. Thus, Appellant's sentence is illegal, and we may reach the issue *sua sponte*. *Commonwealth v. Orellana*, 86 A.3d 877, 883, n.7 (Pa.Super. 2014) ("[T]his Court is endowed with the ability to consider an issue of illegality of sentence *sua sponte*.").

Judgment of sentence vacated. Case remanded for resentencing. Jurisdiction relinquished.

Judge Jenkins did not participate in the consideration or decision of this case.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/15/2017